OLSON & NESSA, Appellees, v. CHARLES T. ROGNESS, Appellant.

**VENDOR AND PURCHASER:** Rescission—Assignment of Specific
1  Ground for Rescission—"'Mending Hold'"—Estoppel. One who assigns *specific* reasons for his rescission of a contract of purchase or sale is estopped, after action has been brought to enforce the contract, to "'mend his hold'" and assign new and different grounds. So *held* where the sole and specific reason assigned by a vendee for rescinding a contract of purchase was that the contract was conditioned upon his wife's approving the same and that she had

refused such approval, the reason assigned, after suit had been brought, being that the vendor did not have any title to the land when the contract was made.

**SPECIFIC PERFORMANCE:** Contracts Enforceable—Vendor Without Title—Knowledge of Vendee—Estoppel. The rule that a vendor who has no title to the land which he contracts to sell, cannot acquire status to maintain an action for specific performance by obtaining a subsequent title, has no application where the vendee knew, when he entered into the contract, *that vendor had no title and must, in reliance on the contract, acquire such title, and vendor does . acquire the title accordingly.*

**SPECIFIC PERFORMANCE:** Defenses—Conditions Defeating Action—Evidence—Vendor and Purchaser. Evidence reviewed, and *held* insufficient to establish the conditions which, it was alleged, defeated an action for specific performance.

**SPECIFIC PERFORMANCE:** Defenses—Fraud of Vendor—Evidence —Vendor and Purchaser. Evidence reviewed, and *held* insufficient to establish fraud on the part of a vendor seeking specific performance.

**PRINCIPAL AND AGENT:** Unauthorized Acts of Agent—Subsequent Ratification—Effect. Subsequent ratification of unauthorized acts of an agent is the equivalent of original authority.

**SPECIFIC PERFORMANCE:** Contracts Enforceable—Meeting of Minds—Evidence. Evidence reviewed, and *held* to show a full meeting of the minds .of the parties on the contract sought to be enforced.

**SPECIFIC PERFORMANCE:** Contracts Enforceable—Non-Interdependent Contracts—Partial Performance. The general rule that equity will not attempt a partial specific performance of an agreement has no application where the two contracts in question, though in some respects part of one and the same transaction, were between different parties, were not interdependent, and neither was executed in consideration of the execution of the other. So *held* where the owner of land contracted to sell his land to one party and, at the same time, contracted to buy land of another.

**SPECIFIC PERFORMANCE:** Contracts Enforceable—Unconscionable Contract—Evidence. Evidence reviewed, and *held* that the contract sought to be enforced was not unconscionable.

**VENDOR AND PURCHASER:** False Representations—Opinion— Nationality of Neighborhood—Knowledge of Vendee. What percentage of people of a certain nationality in a certain neighborhood justifies the assertion that such neighborhood is of that

nationality is largely a matter of opinion, especially in view of the fact that the complaining party visited the neighborhood and must have had knowledge of the surroundings.

*Appeal from Winnebago District Court.*—M. F. EDWARDS, Judge.

SATURDAY, DECEMBER 18, 1915.

ACTION in equity to enforce specific performance of contract for the purchase of land by defendant from the plaintiffs. Decree for plaintiffs as prayed, and defendant appeals.— *Affirmed.*

*Price & Joyce,* for appellant.

*Seneff, Bliss & Witwer,* and *H. A. Brown,* for appellees.

WEAVER, J.—On October 10, 1912, the defendant, Charles T. Rogness, residing in Humboldt County, Iowa, entered into a written contract with plaintiffs, by which he undertook to purchase from them a farm of 280 acres in Winnebago County, at the agreed price of $37,800, payable as follows: $1,800 in hand upon the execution of the agreement; $8,200 on March 1, 1913; and the further sum of $27,800 on March 1, 1918, with interest at 5½ per cent, to be secured by mortgage on the land. Deed was to be made and delivered, with abstract showing good, merchantable title of record in the plaintiffs, on March 1, 1913. Time was made of the essence of the contract. On the same day, through the agency of the plaintiffs, the defendant, Charles T. Rogness, entered into another written contract to sell and convey a farm owned by him in Humboldt County to A. DeSmidt, for the sum of $16,800, to be paid $800 in hand, $5,200 on March 1, 1913, and $10,000 on March 1, 1918, with interest at 5 per cent, to be secured by mortgage on the land. Deed was to be made on March 1, 1913, time being of the essence of the contract. The wife of Rogness was not present at the making of these contracts and signed neither of them. The cash payment of $1,800 due from Rogness was not in fact made on that day;

but it was to be arranged on the following day, or soon thereafter. After executing the writings, Rogness returned to his home in Humboldt County and reported to his wife what he had done. Within a few days thereafter, Rogness, accompanied by his wife, went to the town of Thor, where he was to meet Nessa, one of the plaintiffs, and make the first payment. He there obtained the sum of $1,000, which he paid over to Nessa, the remaining $800 being satisfied by the $800 which plaintiffs were supposed to have received from DeSmidt, on his purchase of the Humboldt County property. Mrs. Rogness knew of the purpose of the meeting of the parties at Thor and of the payment there made and raised no objection thereto, except as she claims that the contract was tentative only and conditioned upon her examining the Winnebago County property and finding the same satisfactory.

In our foregoing statement of the contract, we omitted mention of the fact that plaintiffs reserved the right to cancel the same at any time before October 15, 1912, but never at any time undertook to exercise that option. As a matter of fact, when the contract was made, plaintiffs did not own the Winnebago County property, the title thereto being then in one Ferguson; but they evidently believed they could secure a conveyance thereof to themselves in time to carry out their agreement with Rogness. On October 14, 1912, plaintiffs did obtain a contract with Ferguson for a conveyance of the land at an agreed price of $34,657.50, to be paid $1,000 in hand, $6,657.50 on March 1, 1913, and $27,800 on March 1, 1923, with interest at 5½ per cent, to be secured by mortgage on the land.

On the day following the meeting at Thor and the settlement of the cash payment, Mrs. Rogness went to Winnebago County, and for the first time saw the land. Having examined it, she returned to plaintiffs' office in Forest City, for the alleged purpose of declaring her dissatisfaction with the land; but, neither of the partners being at home, she made her statement to the clerk or employe in charge of the office.

She then returned to her home in Humboldt County, and on the next day wrote a letter to the plaintiffs' employe with whom she had talked, reiterating her dissatisfaction, though not stating its nature, and signed the same with her own and her husband's names. On October 24, 1912, Price & Joyce, as attorneys for Rogness, addressed a letter to plaintiffs, stating that their client, Charles T. Rogness, claimed that plaintiffs had taken advantage of his unfamiliarity with the English language; that the contract "was obtained by methods the propriety of which he seems to question"; and that he further complained that the written contract omitted "certain essential features" which had been agreed upon, and which, it was understood between them, should be made a part of the writing. Upon this statement, an interview with plaintiffs was suggested, looking to an adjustment of the matter. Whether this letter was answered does not appear; but, on December 6, 1912, the defendant, Charles T. Rogness, served upon plaintiffs and upon DeSmidt a written notice of rescission, in the following words:

"To Olson & Nessa and A. DeSmidt:—

"You are hereby notified that the undersigned, Charley T. Rogness, who is alleged to have signed, on the 10th day of October, 1912, one certain contract for the sale of the W½ of NE¼ and the SE¼ of NW¼, Section 36, Township 91 North, Range 28 West of the 5th P. M., to one A. DeSmidt of Pocahontas County, Iowa, and who is also alleged to have signed, on the 10th day of October, 1912, a certain contract by the terms of which Olson & Nessa purport to convey to the said undersigned the NE¼ and E½ of NW¼ of Section 21 and the NW¼ of NW¼ of Section 22, all in Township 97, Range 23, West of the 5th P. M., hereby elects to, and does hereby rescind, cancel, and declares to be null and void each of the said several contracts for the reasons hereinafter set forth:

"That the alleged execution of the said contracts by the said undersigned, together with the payment of $1,000

in cash to Olson & Nessa by the said undersigned, was and constituted but one single transaction. That the said contracts were contemporaneously executed, at which time the said payment of $1,000 was made by the said undersigned to the said Olson & Nessa.

"That the whole transaction, at the time of the execution of the said contracts, and the payments of the said money was made upon the express condition that the said transaction as a whole should receive the acceptance and approval of the wife of the said Charley T. Rogness, without whose signature the conveyance of the first of the above described premises would be impossible, and that it was the understanding by and between all of the parties thereto that the said transaction should be conditional and incomplete until such time as her approval and acceptance had been obtained, and until she had affixed her signature to the same joint instrument for the conveyance of the said first described premises, which constitute the homestead of the said Charley T. Rogness and his said wife. That the said wife of the said undersigned absolutely and unconditionally refused and still refuses to accept or approve the said transaction, and refuses to join in the execution of a conveyance for the same. That by reason of the failure of the said condition upon which the said transaction is founded, the same becomes null and void and of no effect.

"The rescission of the said transaction by the said undersigned is also made for the reason, among others, that his signature was obtained to said contract through collusion on the part of the said Olson & Nessa; that the said Olson & Nessa were guilty of fraud and misrepresentation both in law and in fact. That the said Charley T. Rogness relied upon the false and fraudulent misrepresentations of the said Olson and Nessa, and was deceived and misled thereby; that, but for the said fraud and misrepresentations of the said Olson & Nessa and the reliance thereon by the said Rogness, his signature would not have been affixed to the said contracts.

"The said undersigned, Charley T. Rogness, hereby tenders to said Olson & Nessa, and to A. DeSmidt the said contracts for the purpose of cancelling the same, and demands the return of the duplicates of the said contracts and the cancellation of the same, waiving and releasing all of the parties thereto from any liability thereunder, and hereby demands the return to him of the said sum of one thousand dollars, fraudulently extracted from him by the said Olson & Nessa, as hereinbefore set out.

"A copy of the said contracts herein referred to are hereto attached, made a part hereof, and identified as Exhibits 'A' and 'B'.

"(Signed)                             Charley T. Rogness."

On December 12, 1912, this suit was begun. Thereafter, on February 26, 1912, plaintiffs gave defendant a written notice, as follows:

"Charley T. Rogness,
    "Thor, Iowa.
"Dear Sir:
    "This is to inform you that the deed and the abstracts to the 280 acres of land purchased from us will be at our office ready for your use in closing the deal for the 280 acres of land you bought of us, at any time from now on, or if you should so desire, we will send you the abstracts for examination. Please let me hear from you."

To this, no response seems to have been made.

The foregoing recitation of facts, which are not disputed, will enable us to state more briefly than would otherwise be possible the issues joined by the pleadings, which are voluminous. The petition first sets up the written contract for sale of the Winnebago County land, alleges the ability and readiness of the plaintiffs to perform and the repudiation of the agreement by the defendant, and thereupon demands

judgment for the contract price of the land. By an amendment, plaintiffs further allege that, at the date of the contract, as was then known to defendant, they did not own the land which they undertook to sell; and that thereafter, to enable them to perform the agreement, they did purchase the land, all of which facts were known to the defendant before the attempt to rescind his own agreement to take conveyance from the plaintiffs. They further allege their continued readiness to perform the contract, and tender full performance on their part upon performance by defendant of his undertaking. It is therefore asked that the action be treated as one in equity, and that specific performance be decreed.

Answering the petition, defendant:

(1)   Admits having signed the contract; denies that the writing constituted a contract because of want of mutuality therein; and denies that the writing contains the terms of the agreement made between the parties which it was understood should be incorporated therein.

(2)   Alleges that, in the negotiation between him and the plaintiffs, it was agreed between them that the sale of the land at the price stated should become effectual and binding only upon express condition that defendant's wife and his two sons should, after opportunity to examine the property, find the same satisfactory to them, and upon the further condition that plaintiffs find a purchaser for the Humboldt County farm at not less than $140 per acre, net, on satisfactory terms of payment. He further says that both sales or transfers of land were to be considered as one transaction between the parties, and neither sale should be effectual unless both were made and both were satisfactory to defendant's wife and sons.

(3)   Alleges that, plaintiffs having informed defendant, about October 10, 1912, that they had secured a purchaser for the Humboldt County property, defendant and one of his sons went to Winnebago County and looked at the Ferguson land, it being understood that defendant's wife and other

son should also examine it, later. That, after such inspection by defendant, he informed plaintiffs that he was not satisfied with the property; but plaintiffs, for the purpose of securing undue advantage of him, acting through one Norvedt, their employe, induced defendant to drink certain intoxicating liquors which had the effect to greatly impair his faculties; and, while he was in such condition, they procured or induced him to put his signature to the contracts in question, though he was in such condition as not to know or understand what he was doing; that, to continue such deception, plaintiffs left defendant at a late hour of the night, designedly failing to leave with him a copy of said instruments, and he did not discover or know the real nature thereof until many days later.

(4)   Alleges that, by the terms of the oral agreement with plaintiffs, the purchase of the lands at the price named was also to include certain machinery, appliances and articles of personal property used on the premises; but, in reducing such agreement to writing, plaintiffs took advantage of defendant's inability to readily read the English language or understand the words therein used, to omit any mention of such items from the written agreement, by reason of which wrongful and fraudulent conduct on their part, equity will not enforce the alleged contract.

(5)   Alleges that defendant and his wife are of Norwegian birth; and that one reason for consenting to sell their farm and buy another was to enable them to find a home in a Norwegian settlement and near a Norwegian church; and plaintiffs, to induce the purchase of this land, falsely represented that it was located in a strictly Norwegian settlement and within four miles of a Norwegian church, also within two and a half miles of the town of Miller and six miles of Forest City, all of which representations were relied upon by defendant in entering into the contract; but each and all of said representations were untrue, and so known to the plaintiffs.

(6)    Alleges that plaintiffs further represented the land to be free from quack grass, when, as they well knew, it was infested therewith, and defendant relied thereon in making the contract, when he would not have made the purchase, had he known the truth.

(7)    Alleges that by agreement of the parties, the contract was not to become effective until defendant's wife and sons had examined the premises and were satisfied therewith; and that, upon making such examination, they were not satisfied, and refused to confirm or ratify the transaction, for which reason the contract never had any force or effect.

(8)    Alleges that the Humboldt County land included the family homestead; that the wife never agreed to the sale thereof, and never signed a contract so to do.

(9)    Alleges that, when defendant's wife went to visit the Winnebago County property, as already mentioned, question had already been raised about the omission from the contract of any mention of the items of personal property which were to be included in the sale, and plaintiffs promised to make and execute to defendant a further separate written contract curing such omission and providing for such sale, if the wife should approve of the purchase; and defendant, relying thereon, paid to plaintiffs the sum of $1,000.00, to apply upon the first installment of the purchase price; but defendant alleges that plaintiffs have failed and neglected to perform their agreement in this respect and have never made and delivered such additional agreement.

(10)    Alleges that, for the reasons stated, the defendant, before the beginning of this suit, rescinded said contract of purchase and demanded a return of the money paid thereon.

The same matters are again pleaded by way of cross-petition, and a decree is prayed in defendant's favor, cancelling the contract, and for a recovery of the money paid thereon.

In reply, plaintiffs deny all the matters affirmatively alleged in the answer and cross-petition.

The trial court, after hearing the evidence, found the equi-

ties to be with the plaintiff, and entered a decree enforcing the contract of sale according to its terms, subject only to an accounting by the plaintiffs for rents and profits accruing after March 1, 1913.

I. The first division of the appellant's argument is based upon the admitted fact that plaintiffs did not own the Winnebago land when the contract was entered into. Counsel say that, in making such contract, plaintiffs must be held to have been acting either as purchasing agents for the defendants or as selling agents for Ferguson, and our attention is called to the proposition that, if acting for Ferguson, then, as agents for an undisclosed principal, they cannot enforce specific performance, and that, if acting for defendant, the latter would be entitled to the benefit of the purchase from Ferguson at $125 an acre, instead of $135, as named in the contract.

But there is nothing in the record indicating that plaintiffs were acting as agents either for defendant or for Ferguson, with respect to this land. No such claim is made in the pleadings, and there is no evidence of that nature.

More nearly pertinent is the next proposition, that plaintiffs, not having title to the land when the contract was made, cannot acquire status to maintain an action for specific performance by obtaining a subsequent title.

1. VENDOR AND PURCHASER: rescission: assignment of specific ground for rescission: "mending hold": estoppel.

That such rule has been recognized and applied, see *Luse v. Deitz*, 46 Iowa, 205; *Ormsby v. Graham*, 123 Iowa, 202; *Gossard v. Crosby*, 132 Iowa, 155, 169. But it is a rule subject to numerous exceptions. 6 Pomeroy's Equity, Sec. 769; *Peterson v. Chase*, 115 Wis., 239. A generally recognized exception is that, if the purchaser knows that his vendor has not title when the contract to convey is made, but expects to procure it in time to enable him to carry out his agreement, the buyer cannot avoid specific performance on that account, if his vendor becomes vested with the title before time for performance has matured. Indeed, many leading authorities

go to the extent of saying that, if such vendor, at any time before decree is entered, obtains the title which he promised to convey, the vendee must be held to performance on his part. 6 Pomeroy's Equity, Sec. 772.

It is unnecessary, upon the record now before us, to decide how far we might be willing to go in this direction; for the appellant is in no position to rely upon the objection which he makes. His repudiation of the

**2. SPECIFIC PER-FORMANCE: contracts enforceable: vendor without title: knowledge of vendee: estoppel.**

contract and his rescission, or attempted rescission, thereof was a formal one, made in writing, specifically stating the reasons for his action, and among them is no complaint or allegation that plaintiffs did not have good title to the land when they contracted to convey it, or that they would not be able to convey a good title when the time arrived to do so, under the agreement. Having chosen his ground for the rescission of the contract, he cannot, when sued, for its enforcement, "mend his hold" and insist upon rescission because of some other and different reason. *Donley v. Porter,* 119 Iowa, 542. We may also add that the evidence is quite satisfactory that, when he entered into the contract, defendant knew that plaintiffs did not own the land, and would have to obtain title from Ferguson; and in such case, if plaintiffs, relying upon the contract, procured a conveyance from Ferguson to enable them to perform on their part, then upon the most familiar principles of estoppel, defendant would not be allowed to plead or rely upon plaintiff's original lack of title as showing a want of mutuality in the agreement.

II. It was the claim of appellant that he and his wife contemplated buying the Winnebago land only upon the understanding that they should sell the Humboldt land for

**3. SPECIFIC PER-FORMANCE: defenses: conditions defeating action: evidence: vendor and purchaser.**

at least $140 an acre, and it was the oral agreement between the parties that, before either contract of sale should have any binding force or effect, the wife and sons should confirm the transaction; that their satisfac-

tion with the land was a condition precedent to the sale; and that, such condition having failed, the contract should not be enforced.

This defense is an affirmative one, and the defendant has the burden of sustaining it. In this, as we read the record, he has failed. It is true that he and his wife and sons swear that such talk was had before the writing was made, but this is denied with equal explicitness by plaintiffs, and they are corroborated in a significant degree by many circumstances. Among them is the fact that defendant's wife was not present when the contract was made and cannot speak of her own knowledge as to the final negotiations. Again, the elder son, a young man of 19 years, who was present when the contracts were signed, says distinctly that, when the contract had been prepared and read over, defendant at once noticed that it did not contain any reference to the items of personal property which he had insisted should be transferred to him, and that nothing was said therein about giving opportunity to his wife and other son to inspect the land before purchase. He further says that his father objected to the price set upon the land, and that, because of these objections, he did not wish to sign the paper; and yet, according to his statement, after long discussion defendant did sign it, and left it with plaintiffs. It is his claim, however, and that of defendant, that the plaintiffs agreed to prepare another or additional written contract for the transfer to defendant of the personal property of which mention had already been made.

The defense pleaded, in this connection, that defendant was intoxicated to such degree as to be incapable of understanding the nature and effect of his acts, has scarcely more than a shadow of support in the testimony, and it is not strongly urged in argument. It is very evident that he thoroughly understood what the written contract contained, and that its terms were made the subject of much discussion by him before he executed it. When the record is shorn

of the more or less irrelevant matters injected into the case, it appears that the first and foremost thing over which defendant hesitated was the price demanded by plaintiffs, and the next was his desire to have a cream separator, silo cutter and certain other conveniences which he saw on the farm included in the sale; but he signed the agreement, knowing that these things were not provided for therein. His claim that there was an oral agreement relating to the personalty is denied by plaintiffs, who say that the extent of their promise was to see Ferguson and try to persuade him to leave some of the things on the place. This promise they say they performed, and secured Ferguson's consent to leave several of the articles of minor importance.

Still again, the conduct of defendant in continuing to recognize the contract for a period of several days is inconsistent with the position that he now takes that it was left incomplete on the day it was made, and was still to be supplemented with another contract, before he was bound to go on with the purchase. It is quite incredible that he should have recognized either contract as being still in doubt, for he thereafter proceeded to satisfy the first installment of $1,800 of the purchase price by paying to plaintiffs the sum of $1,000 in cash, allowing them to retain the advanced payment of $800, which they reported having received from the sale of the Humboldt County farm to DeSmidt.

III. We are asked to deny plaintiff's specific performance because of their fraud. The alleged fraud is said to consist in this: that plaintiffs knew that defendant would not purchase the Ferguson land unless he should first make sale of the Humboldt County farm, and, to bring about such result, they falsely represented to defendant that they had sold or found a purchaser for his farm. The facts in this respect seem to be that plaintiffs had some negotiations with DeSmidt as a proposed purchaser

4. SPECIFIC PERFORMANCE: defenses: fraud of vendor: evidence: vendor and purchaser.

of defendant's farm, but no agreement had been reached. Defendant was asking $145 an acre, and DeSmidt would not agree to pay that price. At length, defendant having told plaintiffs that he would shade the price somewhat, they prepared the written contract for the sale of the land at $140 on October 10, 1912, as we have before recited, and defendant signed it; but DeSmidt was not present and did not sign until the following day. It appears, however, in the trial, that, when plaintiffs reported to DeSmidt what they had done, he refused at first to ratify their act, insisting that he would not pay the price. Plaintiffs finally agreed with him that they would assume payment of the cash installment of $800, which they took care of by crediting that amount to the defendant in making up the cash payment on his purchase. Upon this inducement, DeSmidt ratified the contract, and, on the trial of this case, testified that he was ready, able and willing to complete the purchase. It was further developed on the trial that plaintiffs had a margin of profit of ten dollars an acre on the sale of the Ferguson land to defendant, thus making up their loss on the sale to DeSmidt and leaving a final difference in their favor on the double transaction of $2,000. It will be remembered that plaintiffs had reserved to themselves a period of five days in which they might cancel their contract, and this was doubtless to enable them to withdraw from the deal if, for any reason, they should find it impracticable to make satisfactory arrangements with Ferguson on the one hand and DeSmidt on the other; and it seems they were fortunate enough to do both. While plaintiffs were engaged in a hazardous enterprise, requiring the agile skill of experienced navigators to keep themselves off the rocks, we discover nothing in the record upon which they can be charged with fraud to the detriment of defendant. It is true they reported to him a sale to DeSmidt, and, while their authority to contract for the latter may have been open to question, his subsequent rati-

5. PRINCIPAL AND AGENT: unauthorized acts of agent: subsequent ratification: effect.

fication was the equivalent of original authority, and defendant was in no manner prejudiced. It was also incidentally disclosed on the trial that, on the visit of defendant's wife to Winnebago County, after the contract was made, she first learned that plaintiffs had bought the land from Ferguson at ten dollars an acre less than the price at which they were selling it to defendant; and this was, no doubt, a large, if not the main, factor in her feeling of dissatisfaction with the purchase.

IV.   It is said that there was no meeting of the minds of the parties, and, therefore, no enforceable contract. This is argued from the fact that the contract for the purchase

6. SPECIFIC PER-
FORMANCE: con-
tracts enforce-
able: meeting
of minds:
evidence.

of the Winnebago County land, as originally drawn, provided for interest at 5½ per cent, in deferred payments; but the contract for the sale of the Humboldt land to DeSmidt provided for five per cent.   The discrepancy between the interest to be paid and the interest to be received seems to have escaped defendant's serious attention until the day when he and one of the plaintiffs went to the bank at Thor to settle the cash payment of $1,800.   He then objected to it; and, in the course of discussion, the bank cashier took a pen and struck the fraction ½ from the contract with plaintiffs, thus making the interest rate in both contracts read alike.   While it is suggested that this act of the cashier was unauthorized, neither plaintiffs nor defendant objected thereto, and it seemed to settle the dispute.   Moreover, plaintiffs in this action claim to recover only 5 per cent, thus recognizing the contract as amended and thereby ratifying the change; and, it cannot be said that there was no agreement of minds.   The contracts, so far as interest is concerned, are precisely as defendant insists they should have been.

V.   Counsel contend that the two contracts should be treated as one, and, therefore, the decree below which en-

forces performance of one of them only, violates the rule that equity will not attempt a partial specific

7. SPECIFIC PER-
FORMANCE: con-
tracts enforce-
able: non-inter-
dependent con-
tracts: partial
performance.

performance of any agreement.

The rule thus appealed to is not here applicable. While it may be true that both contracts were a part of the same transaction, in the sense that defendant would not have undertaken to buy the Ferguson land had no purchaser been found for his own farm, neither contract was made in consideration of the other. The parties to the two contracts were not identical; and when defendant had accepted DeSmidt as a purchaser and entered into a contract with him, neither agreement remained in any respect dependent upon the other, and plaintiffs, in undertaking to enforce the contract made with them, were not required, and, indeed, would not be heard, to demand performance between defendant and De-Smidt.

VI.   Finally, it is said that the decree below works an unconscionable hardship upon the defendant.

We think this complaint is not borne out by the record. The evidence is undisputed that the land which the defendant contracted for is worth, in market value, the full price

he promised to pay, and that the sale of

8. SPECIFIC PER-
FORMANCE: con-
tracts enforce-
able: uncon-
scionable con-
tract: evidence.

his home farm to DeSmidt was made at a reasonable valuation. So far as the record shows, he loses nothing whatever. If it be said that the effect of it is to burden him

with a purchase money debt of very considerable proportions, it is a sufficient answer that such indebtedness was necessarily contemplated by him from the beginning, and that, for each dollar of the debt, he is to receive a dollar's worth of property.

We have omitted any discussion of the claim made by defendant that he was deceived by the plaintiffs into believing that the land was in a Norwegian settlement and in the

vicinity of a Norwegian church. We find no merit in the defense. Defendant and his son both visited the land and must have seen its general location and surroundings. Again, what proportion or percentage of Norwegians in that vicinity would be required to constitute a Norwegian settlement or neighborhood is obviously a very uncertain quantity,—a mere matter of opinion, upon which equally intelligent persons could differ. There was a very considerable number of people of that nationality in and about that part of Winnebago County; though, upon the immediately adjoining property, the neighbors were more largely of some other origin. There were two Norwegian churches in the township, and the two towns spoken of were not materially farther away than stated by the plaintiffs. Altogether, defendant has quite clearly failed to show that he was deceived or misled in this regard.

*9. VENDOR AND PURCHASER: false representations: opinion: nationality of neighborhood: knowledge of vendee.*

Upon the whole record, we find the equities with the plaintiffs and the decree below is—*Affirmed.*

DEEMER, C. J., EVANS and PRESTON, JJ., concur.