EDWARD DURBAND et al., Appellants, v. JOHN NEY et al., Appellees.

**SPECIFIC PERFORMANCE:** Contracts Enforcible—Adequate Interest. A plaintiff may maintain an action for specific performance when, at the time he contracts to sell the land, he has an enforcible contract with a testamentary trustee for the purchase of the land and possession thereunder, and when his said contract for purchase has ripened into full legal title by the time he is called upon to perform his contract to sell. Especially is this true when the defendant knew, when he contracted to buy, that his vendor had not yet perfected his title.

**ALTERATION OF INSTRUMENTS:** Materiality. An alteration of a written contract which does not take from or add to the legal effect of the instrument is not material. So held where, after the wife had signed a contract for the transfer of the husband's lands, her name was, without intent to defraud, inserted in the *body* of the contract.

**VENDOR AND PURCHASER:** Construction and Operation of Contract—Substitution of Mortgages. A purchaser of real estate who has assumed and agreed to pay certain existing mortgages may not

complain if the mortgages in question are in good faith surrendered by the parties thereto and other mortgages of the *same tenor and effect* substituted.

VENDOR AND PURCHASER: Rescission by Purchaser—Belated Objec-
4  tions. Principle reaffirmed that, when an abstract of title is pre-
sented to a purchaser of real estate, he must make known all his
objections within a reasonable time.

VENDOR AND PURCHASER: Rights and Liabilities of Parties—
5  Mortgages. The purchaser of real estate is put on inquiry as to
the terms of mortgages which he has assumed and agreed to pay.

VENDOR AND PURCHASER: Rescission by Purchaser—Assumption
6  of Mortgage—Unusual Provisions. A purchaser who has been in-
duced, without fraud, to assume the payment of certain mortgages
may not thereafter justify a rescission on the grounds that the
mortgages contain unusual or noncustomary provisions.

FRAUD: Fraudulent Representations—Legal Opinion. Fraud may not
7  be predicated on a good-faith opinion as to the law governing a
subject-matter.

*Appeal from Sioux District Court.*—W. G. SEARS, Judge.

JANUARY 16, 1923.

REHEARING DENIED OCTOBER 16, 1923.

ACTION in specific performance. The opinion sufficiently states the facts. Judgment and decree entered in favor of the defendants. Plaintiffs appeal.—*Reversed.*

*T. M. Zink* and *Scott M. Ladd,* for appellants.

*W. G. Pitts* and *C. W. Pitts,* for appellees.

DE GRAFF, J.—Plaintiffs seek to specifically enforce a contract with defendants for the sale of certain Sioux County, Iowa real estate. In order to avoid repetition in statement, the ma-

1. SPECIFIC PER-
FORMANCE: con-
tracts enforcible:
adequate interest.

terial facts in evidence will be recited in connection with the points and propositions advanced by appellants, and it will suffice at this time to briefly state the chronology of the case.

(1) John M. Whitman died testate in Illinois October 29,

1912 and at the time of his death was seized of the land in controversy.

(2)   On December 9, 1912 his will was duly and legally admitted to probate by the probate court of the county of Cook and state of Illinois.

(3)   On January 21, 1914 the said will was admitted to probate as a foreign will and entered upon the probate records in the office of the clerk of the court in Sioux County, Iowa by order of a judge of the district court of Iowa in and for Sioux County.

(4)   On June 11, 1919 the Northern Trust Company of Chicago, an Illinois corporation, as the acting and qualified executor of the will of John M. Whitman and the trustee of his estate with power of sale under said will, entered into a written contract for the sale of the land in question (Section 3) with other lands owned by Whitman at his death to the plaintiffs under the terms and conditions recited in said contract.

(5)   On March 2, 1920 plaintiffs' attorney wrote an opinion letter to the plaintiffs in compliance with their request in which he questioned the power and authority of the Northern Trust Company, as an Illinois corporation, to act as executor of the will and a trustee of the estate in Iowa.

(6)   On June 19, 1920 by virtue of their contract with the Northern Trust Company plaintiffs entered into the written contract in suit with the defendant John Ney in which they undertook and agreed to convey Section 3, Township 94, Range 43, West of the 5 P. M. in Sioux County, Iowa, except an acre belonging to the school district and the right of way of the Chicago & Northwestern Railway Company, under the terms and conditions recited therein. This contract was subsequently typewritten and signed by the plaintiffs and wives respectively and by the defendant John Ney and his wife.

(7)   A supplementary contract bearing date June 19, 1920 was signed by plaintiffs Durband and Nicholson and defendant John Ney by which the plaintiffs agreed to survey Section 3 to determine the acreage therein as a basis of payment on the original consideration of $415 per acre.

(8)   On July 17, 1920 the Northern Trust Company and Howard O. Edmunds, its vice president, petitioned the district

court of Sioux County, Iowa for the appointment of Edmunds as trustee and executor of the will of John M. Whitman, and on that date an order was entered making certain findings and appointing Howard O. Edmunds as executor and trustee of the last will of John M. Whitman and of the estate of said decedent, and vacating the order previously entered (January 21, 1914) appointing the Northern Trust Company executor and trustee respectively of the will and of the estate of John M. Whitman.

(9)   On September 6, 1920 Howard O. Edmunds, as executor and trustee, petitioned the district court of Sioux County for authorization to execute and perform all the powers contained in the will of John M. Whitman as fully as the Northern Trust Company could have done had it been appointed and qualified to act as trustee, and to transfer all the proceeds of sale of all lands situated in Sioux County, Iowa to the Northern Trust Company and to assign all notes given, etc.

(10)   On September 6, 1920 an order of court was entered granting the prayer of the petition and further authorized and directed the said trustee to sell and convey the real estate described in his petition to the plaintiffs herein under the terms and conditions of the contract of sale bearing date June 11, 1919.

(11)   On January 10, 1921 a report of the sale was made by the trustee to the court and an order entered approving the sale and confirming the deed of the said executor and trustee to the plaintiffs.

(12)   On January 24, 1921 the abstract of title to Section 3 was forwarded by the plaintiffs to the defendant John Ney for examination.

(13)   On February 2, 1921 the defendant Ney notified the plaintiffs that he refused to recognize the contract of sale of June 19, 1920 as valid, and refused to make further payment thereon for the reasons (a) that his wife Mary refused to join in the deed of the Lynn Township Sioux County land agreed to be conveyed to the plaintiffs as part consideration; (b) that plaintiffs were not the owners of the land contracted to be sold at the date of said contract; (c) that there was gross misrepresentation as to the land being free from Canadian thistles and cockleburs.

(14)   On February 21, 1921 a survey and plat of Section 3

was furnished to the defendant Ney disclosing 633.74 acres exclusive of the railway right of way and school site.

(15) On March 5, 1921 plaintiffs' petition in this action was filed.

With this brief review of the essential facts in the history of this cause, we pass to the propositions relied upon by plaintiffs for a reversal.

I. Did the plaintiffs have such an interest in the land agreed to be conveyed to the defendant that they could have compelled specific performance against their vendor, the Northern Trust Company, at the time the instant contract was executed?

The original title holder John M. Whitman executed a valid will and its terms and provisions are not questioned. He appointed the Northern Trust Company, an Illinois corporation, as trustee with power of sale. This was a legal appointment under the law of Illinois. Had the Northern Trust Company been an Iowa corporation the appointment would have been legal. Section 1889-d Supplemental Supplement Code 1915.

It must be conceded that the trustee appointed held the legal title to the land agreed to be conveyed at the time the purchase contract of June 11, 1919 was entered into by the plaintiffs, and that the trustee had the power to sell the land on such terms as might be agreed with the purchaser. The will had been admitted to probate in Cook County, Illinois. That no link in the chain of title should be missing it was necessary that the Whitman will should be spread upon the records of the county where the land was situated. This was done in conformity to Section 3295 of the Code of Iowa, which provides: "If the executors or trustees under such wills [foreign] are empowered to sell and convey real estate, then, upon the production and recording in the proper probate record of a copy of the original record of the appointment, qualification and bond, unless bond was waived in the will, duly authenticated in the manner foreign wills are required to be, such executors or trustees may, in conformity with the power granted in such wills, sell and convey real estate within any county in this state where such probate and proof of qualification may be of record, without further qualifying in this state, and without reporting such sale to the district court in this state for approval; and such sales and conveyances shall have the same

force as if made by executors or trustees qualified within this state and reported to and approved by the district court.''

There was a compliance with this statute when the Whitman will was admitted to probate and recorded in the office of the clerk of the court in Sioux County, Iowa under the order of January 21, 1914.

By reason of the legal opinion given by plaintiffs' attorney a formal petition for letters testamentary was filed in the district court of Iowa in and for Sioux County on behalf of the foreign executor and trustee, and on July 17, 1920 an order was entered in conformity to the prayer of the petition. This was probably done out of an abundance of caution. It was, however, a proceeding recognized by the statute of this state and could have constituted the initial step in the administration upon the estate of the decedent in the courts of this state. Code Section 3295.

Conceding the law to be as herein stated plaintiffs had an enforcible contract with the Northern Trust Company, the then fee title holder. They acquired an equitable title and possession, and that title and possession was in existence when plaintiffs under contract of June 19, 1920 agreed to convey the land in controversy to the defendant John Ney. *Allen v. Adams* 162 Iowa 300. An equitable estate in land or the right to become the owner of the land is as subject to sale as the land itself, and when such owner is so situated with reference to the land that he can acquire the legal title thereto, either by the voluntary act of the title holder or by action in court, he is then in a position to make a valid and enforcible agreement for the sale thereof. *Easton v. Montgomery* 90 Cal. 307; *Provident Loan Tr. Co. v. McIntosh*, 68 Kan. 452.

Specific performance is not a matter of absolute right to either party, but it is a remedy which is controlled by established doctrines and settled principles of equity. *Mitchell v. Mutch*, 180 Iowa 1281; *Carter v. Schrader*, 187 Iowa 1245.

In the instant case it is clearly established that the plaintiffs were vested with the fee title before the time of performance of the contract with John Ney, and had the defendant accepted the deed tendered by the plaintiffs he would have had a perfect title to the land in controversy subject to the incumbrances which he

assumed and agreed to pay as part of the consideration for the sale.

It is contended, however, by the defendant that he did not know the condition of the title at the time the contract was made, but relied on the fact that the title was then in the plaintiffs. The record does not sustain this contention. True the rule is recognized that if a vendor does not have title to the land when the contract of sale is made he cannot acquire a status to maintain an action for specific performance by obtaining a subsequent title. This rule however, is subject to well defined exceptions. *Olson & Nessa v. Rogness*, 173 Iowa 331. If the purchaser knows that his vendor has not title when the contract to convey is made, but he expects to procure it in time to enable him to carry out his agreement, the vendee is not privileged to avoid specific performance for that reason, if his vendor is in fact vested with the title before the time for performance has matured.

The evidence satisfies this court, as it did the trial court, that the defendant vendee knew that his vendor did not at the time the contract of purchase and sale was executed possess the legal title, but that it was to be secured before the date of performance. The vendor held that title and tendered it at date for conveyance. *Rasch v. Jensen*, 144 Iowa 274.

II. At the time the original contract in suit was signed, the respective wives of the signers were not present. Subsequently the original written contract was typewritten according to the prior oral agreement, and in the body of that contract the names of the respective wives of plaintiffs were inserted and the contract was signed by them. The name of the defendant's wife was not in the body of the typewritten contract for the reason, as testified by plaintiffs' agent Cass, that he did not know her name. At the time she attached her signature, her name was not in the body of the contract, but subsequently it was inserted by plaintiffs' agent. It is the contention of the appellee that the addition of her name in the body of the contract vitiates it by reason of its being a material change and alteration in the contract.

2. ALTERATION OF INSTRUMENTS: materiality.

Did the alteration give the instrument a different legal effect as to the defendant John Ney? If it was intended to impose an obligation upon the wife Mary other and different than what she

intended and contemplated it would be void as to her. It is quite apparent that Mary Ney intended to bind herself in some manner when she executed the contract. When she signed it she compared the typewritten contract with the first contract. She admitted that she signed the contract in duplicate and kept one of them. She understood that her husband had agreed to convey his Lynn Township farm on the deal. She knew and so testified that the only way her distributive share could be released was by signing the contract, but she states, "I did not think about that being the reason I should be asked to sign the contract."

There are no indicia of fraud in the securing of her signature. All parties knew that a typewritten contract was to be prepared and signed by the wives. In the re-execution of the ink written contract the parties were doing what they had agreed to do and they must have understood when they re-signed that they were acting upon the prior agreement. The affixing of her signature can be regarded only as an expression of her assent to the act of the parties in making the contract and would work as an estoppel against her assertion in the future of an adverse interest in the subject-matter of the agreement. "It was not her contract in the sense that it was the contract of the other party whose name appears in the body thereof and whose signature is attached thereto." *Holt v. Doty,* 193 Iowa 582.

Plaintiffs concede that Mary Ney is not liable to a personal judgment on the instant contract. It is a question of intent, and the insertion of her name by the plaintiffs' agent (the mere filling of a blank as claimed by them) in no wise changed the liability of anyone on the contract. An alteration that does not give the instrument a different legal effect is not a material alteration and will not avoid it. *Briscoe v. Reynolds,* 51 Iowa 673; *Iowa Valley St. Bank v. Sigstad,* 96 Iowa 491. We therefore conclude that the trial court was in error in holding that the insertion of the name "Mary Ney" changed the legal effect of the contract.

III. Under the terms of the contract of June 19, 1920 the plaintiffs undertook and agreed to convey a certain described parcel of real estate in Sioux County, Iowa subject to four mort-

3. VENDOR AND
PURCHASER:
construction and
operation of
contract: sub-
stitution of,
mortgages.

gages aggregating $160,000. The defendant John Ney agreed to convey to plaintiffs a certain 160 acres of Lynn Township Sioux County Iowa land at $450 per acre and to pay a difference of $25,515.80 of exchange value of which $2,000 was paid down, $2,000 to be paid August 1, 1920, a note of $6,000 without interest payable March 1st, 1921, and on said date $15,515.80 in cash. With respect to the payment of the mortgages the contract of sale reads as follows: " * * * Subject to four certain first mortgages now on the above described real estate, said mortgages amounting to $160,000 with annual interest of 5 per cent per annum, which second party agrees to pay from March 1, 1921, including yearly payments of $3,200. * * *."

The mortgages referred to in this contract were then in existence and were held in escrow by the American Trust & Savings Bank of LeMars, Iowa. They were never delivered except in escrow and were later canceled and returned to the makers. They bore date of March 1, 1920. The Northern Trust Company was named as the mortgagee in each of the mortgages, and was the payee in each of the coupon notes attached to said mortgages. The notes accompanying the mortgages were payable annually in the aggregate of $3,200. for nine years and the balance on each of said mortgages was due and payable March 1, 1930. Due to the order of court entered appointing Howard O. Edmunds as trustee, and the cancellation of the initial order admitting the Whitman will to probate in Sioux County, the foregoing mortgages were canceled and four other mortgages were executed which the defendants are now asked to assume. These later mortgages bear date December 6, 1920, were acknowledged January 10, 1921 and were filed for record January 13, 1921. These are the mortgages noted on the abstract of title tendered defendants. These new mortgages also total $160,000 and the nine annual payments are each in the sum of $3,200. They bear the same rate of interest and the same dates of maturity. These notes and mortgages are all made to Howard O. Edmunds as trustee, and contain the same stipulations and provisions as found in the original mortgages.

The abstract of title furnished by plaintiffs within the time fixed by the contract set out the names of the instruments ab-

stracted, names of the parties, dates, description of the property, maturity of the mortgages, and the date and book where the instruments described are recorded.

It is the contention of the defendant John Ney that the terms of the mortgages in relation to the maturity thereof and the payments at maturity are at variance with the terms of his contract of purchase, and that this variance is a sufficient ground for a refusal to perform. No reformation was prayed. When the abstract was returned to the plaintiffs by the defendant Ney with his objections, February 2, 1921, no mention was made by him of the reason now urged as ground for rescission, nor was specific objection of this matter made by him at any time prior to suit. The defendant was bound to present all his objections to the title at the time the abstract was presented to him or within a reasonable time thereafter. The contract so provided. See, *Stevenson v. Polk* 71 Iowa 278; *Lessenich v. Sellers,* 119 Iowa 314; *Donley v. Porter,* 119 Iowa 542. In passing it may be said that the abstract furnished defendant did exemplify a perfect title in the plaintiffs.

4. VENDOR AND PURCHASER: rescission by purchaser: belated objections.

Was there a variance in the particular above mentioned? The contract in suit imposed the obligation on the defendant Ney the payment of the mortgages under the terms thereof as existing on the date of his contract to wit: June 19, 1920. He assumed the payment of these mortgages as a personal obligation, and he was put on inquiry as to terms and provisions of these mortgages as they then existed. Ney testifies that no one ever told him that the mortgages matured ten years from March 1, 1920 and that no one ever told him the date of their maturity. This evidence is in conflict, as plaintiffs testified that Ney was told the date of maturity. Ney knew that the notes and mortgages were then in existence, and it is fairly shown that he also knew that they were held in escrow by the American Trust & Savings Bank. He is also chargeable with the knowledge that the form of the mortgage must have been selected or could be selected and agreed upon by the parties to the original sale contract and who were the parties named in the mortgages. He assumed the payment of them in their then existing form and

5. VENDOR AND PURCHASER: rights and liabilities of parties: mortgages.

agreed to pay them. This was part of the consideration. The terms of these mortgages were as much a part of the contract which he signed as though he had had inserted into the contract the specific terms thereof. The terms of these mortgages could not be changed without the consent of the parties thereto, and his only right was that if the then existing mortgages were surrendered and canceled and substitutions made that the mortgages which should be in existence when he acquired legal title should be of the same tenor and effect as contemplated by his contract. Therefore the terms of the contract with respect to annual payments, interest and maturity must be read in the light of the "four certain first mortgages now on the above described real estate." Our conclusion is that as to the terms of payment and the time of payment there is no variance.

IV. Each of the original and the substituted mortgages contained a clause providing for the appointment of a receiver in the event of foreclosure, and also a clause obligating the mort-

6. VENDOR AND PURCHASER: rescission by purchaser: assumption of mortgage: unusual provisions.
gagors to pay all taxes and assessments that might thereafter be levied upon the mortgage or indebtedness secured by it, by the state, county, or local municipality. It is contended by the defendant Ney that these clauses are not customary, but were unusual and exceptional in Sioux County, and constitute obligations and incumbrances not assumed by him under the terms of the written contract of sale.

The statement of legal principle heretofore made in relation to the maturity of said mortgages finds application to this proposition. There was no actual or constructive fraud in these matters. As a matter of law the stipulation for a receiver in the event of foreclosure does not enlarge the rights of the mortgagee. Under our statute a court of equity may appoint a receiver with or without a stipulation, and it may refuse to appoint one under the facts of a given case even though the mortgage provides for a receiver. If the security is ample the court will not appoint a receiver in either case. It is a matter of judicial discretion.

The notes and mortgages in question were owned by a nonresident and were not subject to taxation or assessment under the laws of Iowa. The provisions as to taxation is a mere contingency in any event and this is not sufficient to constitute a

liability. *Fernald v. Johnson,* 71 Me. 437; *Wight v. Gottschalk* (Tenn.), 43 L. R. A. 189; 13 Corpus Juris 116.

However, the tax clause was eliminated by a release executed by the plaintiffs and their mortgagee and filed for record during the progress of the trial and it was pleaded by the plaintiffs in an amendment to their petition.

The testimony discloses that all parties understood that the mortgages were to be on the form of the Northern Trust Company.

The defendant must have known that the form of the mortgage had been selected by the parties thereto, and in the absence of false representation it was his duty before assuming the payments thereof under the terms therein to inspect them or have them examined. Custom plays no part under such circumstances, and the defendant did not expect to execute the mortgages and notes thereby secured. He reserved no right unto himself to prescribe the terms and provisions of these mortgages. He must have known that he was without power to say anything about this matter. He agreed to assume and pay the mortgages and it is now too late to complain of the provisions contained therein. He was not misled by anything said or done by the plaintiffs. True they were eager to sell and the psychology of salesmanship may have played a part, but there was nothing done by any "Babbitt" in this real estate deal that classifies as fraudulent.

V. A further issue was presented to the trial court for decision in that defendant alleges as a defense that plaintiffs misrepresented the liability of defendant relative to the payment of an income tax by him on the 160 acres of Lynn Township land agreed to be conveyed to plaintiffs. The record discloses that the matter of income tax was under discussion by the parties prior to the execution of the contract of sale, and the evidence shows that plaintiff Durband told Ney that a Mr. Shipley of Sheldon, a deputy revenue collector, told him and Nicholson that no income tax had to be paid on land traded or exchanged for other land. Shipley was not called as a witness in the case. At most what was said was an expression of an opinion on a matter of law and under the circumstances fraud may not be predicated thereon. If it were necessary for a decision, we would be willing to hold

7. FRAUD: fraudulent representations: legal opinion.

that under the Federal law as it existed at the time of the alleged conversation, no income tax was due and payable by reason of the exchange of the real estate under the contract in suit. Plaintiffs owed the defendant no duty other than to act in good faith and speak truthfully.

The record does not bear out the claim that the statement was made by way of inducement. Neither party to the contract pretended to know the law governing the payment of an income tax. If a mistake was made in the statement as to liability it was simply an expression of opinion and mistake of law without attending circumstances containing the elements which afford relief on the ground of fraud. See, *Stafford v. Fetters,* 55 Iowa 484; *Utermehle v. Norment,* 197 U. S. 40 (49 L. Ed. 655) ; *Bank of the United States v. Daniel,* 37 U. S. 32 (9 L. Ed. 989).

VI. Other minor points are presented in briefs and arguments but they are not controlling on this appeal. We find no basis for the claim that the plaintiffs falsely represented to the defendant the number of acres in Section 3. Neither party knew the number of acres in this section and for this reason the supplementary contract was entered into whereby the acreage was to be determined by a survey. This was done. No objections were made to performance of the contract on that account when the abstract of title was returned to the plaintiffs. The defendant Ney himself testified, ''I did not know the acreage of Section 3 when I signed the contract.'' The plaintiffs were in doubt and they testified that they were ''not certain as to the number of acres in the section.'' The proposition to make the survey was accepted and we find no reason upon which to base a complaint.

The trial court further determined that the plaintiffs were innocent of any misrepresentation as to Section 3 being free from Canadian thistles and cockleburs. The defendant inspected the land, and the trial court found that the defendant knew that cockleburs and Canadian thistles grew on the section before he signed the agreement. This presents a question of fact purely, and we agree with the finding in this particular.

For the reasons indicated this cause is—*Reversed.*

PRESTON, C. J., STEVENS and FAVILLE, JJ., concur.