THE TELEGRAPH AND TIMOTHY DILLON, Appellants, v. PATRICK J. LEE AND THE DUBUQUE SPECIALTY MACHINE WORKS.

Corporations: SUIT BY STOCKHOLDERS: FORMER ADJUDICATION. In a suit in equity by stockholders of a corporation to recover from its treasurer money alleged to belong to the corporation, a judgment abating a prior action after trial de novo in the appellate court, based on the plea that no demand of the directors to bring suit had been made and refused, was not a bar to a subsequent action by the stockholders for the same relief after such demand and refusal.

Demand that directors sue: SUFFICIENCY. A demand that directors of a corporation bring suit to recover corporate funds, which is signed by two of the four directors and served upon the other two, one of whom is the secretary and only officer, is sufficient, and its refusal will authorize a suit by the stockholders.

Purchase of claims by officers: ACCOUNTING FOR PROFITS. The treasurer of a corporation who secretly purchases a claim against the corporation at a discount, and thereafter pays himself the full amount thereof from corporate funds in his hands as treasurer, without disclosing the nature of the transaction, must account to the corporation for the profits.

*Appeal from Dubuque District Court.*— HON. M. C. MATTHEWS, Judge.

SATURDAY, JANUARY 30, 1904.

Suit in equity to recover of the defendant Lee, for the benefit of the stockholders in the defendant company, the sum of $2,000, alleged to be due the company from him. A general statement of the case will be found in *Dillon v. Lee,* 110 Iowa, 156, and it is not necessary to repeat it here. After the final decision in the former case, this suit was brought and prosecuted to a judgment in favor of the defendants, from which the plaintiff's appeal.—*Reversed.*

*William Graham* and *J. B. Powers,* for appellants.

*McCarthy Kenline & Roedell,* for appellees.

SHERWIN, J.— The issues made by the pleadings in this case are in all material respects the same as they were upon this branch of the case on the former trial, and the defend-

1. SUIT BY STOCKHOLDERS: former adjudication.

ants have pleaded a former adjudication based upon the final decree of this court in that case. In the Dillon-Lee Case, *supra,* the petition alleged that the directors of the corporation had been requested to bring suit against Lee for the recovery of the money in question, and that they had refused to do so. This was denied by the defendants, and no evidence was offered in support of the allegation. In disposing of that case upon the appeal this court did not determine whether Lee had appropriated any of the corporation's funds. No question was discussed on this branch of that case, except the one of failure to prove that the directors had previously been requested to bring a suit against Lee. We held that this demand was necessary, that no excuse for not making it was pleaded or proven, and for these reasons alone that the plaintiffs were not entitled to recover on that claim. We said, " Under this state of the record, plaintiffs are not entitled to recover the alleged profits made by Lee in the purchase of the Hillis-Smith claim, even if the record established the claims made by them." It was an adjudication that the suit had been prematurely brought, and nothing more. It is insisted, however, that because the question was tried upon its merits in the court below, and the petition dismissed, and because the court affirmed that part of the judgment, it was affirmed on the merits. But the case was in equity, and was triable *de novo* by this court, and this court was in no way bound by the trial court's conclusion of fact. When we obtained jurisdiction of it, we were bound to determine questions of fact as well as of law, unless we should find that the

action should be abated.   In Trescott v. Barnes, 51 Iowa, 409, relied upon by the appellees, the precise issue had been tried in a former action, and an appeal taken from the judgment which was finally affirmed because the case was not triable de novo in this court, and no errors were assigned.   The court could not then consider the merits of the case, and there having been a judgment on the merits in the trial court, there was a final adjudication on the merits when the case was affirmed.

The controlling question here is whether the judgment of this court was, in effect, upon a plea in abatement.   If it was, the plea of a former adjudication cannot avail, under all of the authorities.   Bouvier defines " abatement " as " a suspension of all proceedings in a suit, from the want of proper parties capable of proceeding therein;" and this, we take it, is the generally recognized definition.   Pleas in abatement do not go to the merits of the action but rather to the procedure, and are common when it is claimed that the action has been prematurely brought.   Harrison v. Fire Insurance Co., 102 Iowa, 112; Foster v. Busteed, 100 Mass. 409, 1 Am. Rep. 125.   That the issue in the Dillon-Lee Case tendered the plea of abatement, in effect, and that the judgment was based thereon, is apparent from the entire discussion of the question and from the following language of the opinion:  " It is said, however, that the issue should have been tendered by plea in abatement.   If that be the general rule, plaintiffs have made this case an exception by alleging demand and refusal, which defendants denied.   Surely defendants were not, under such a state of the record, required to plead the matter in abatement."   All that was determined in the former suit was that a demand was a necessary preliminary to its maintenance, and that no evidence was offered on the subject.   A party who fails to prove a material allegation affecting the merits of his case, or who attempts to split his cause of action and try it piecemeal, must suffer the consequences of so doing; but it has never been held, so far

as we are advised, that the abatement of a suit because the plaintiff has not proven capacity to sue will bar another suit.

There were four directors of the corporation at the time the request to bring suit was made and the written request was served upon two of them, one of whom (the defendant Lee) was the secretary of the corporation and *2. DEMAND THAT DIRECTORS SUE: sufficiency.* its only officer at that time. Mr. Quigley, who was one of the directors, was also the manager of the plaintiff, the Telegraph, and signed the demand. It is also alleged in the petition that Boothby and Lee, the two directors upon whom the demand was made, refused to recognize the other two directors. We think the demand sufficient. Lee was the secretary of the corporation, and we think service on him alone would have been sufficient, applying by analogy section 3531 of the Code, which provides that service of an original notice may be made upon any officer of a corporation. See, also, *City of Chicago v. Cameron,* 120 Ill. 474; 11 N. E. Rep. 899.

In January, 1892, Smith assigned to D. M. Hillis, of Chicago, one-half of the $14,000 obligation of the corporation to secure Hillis for loans; and in September, 1892, *3. PURCHASE OF CLAIMS BY OFFICERS: accounting for profits.* Smith made the following assignment to Lee: "For value received I hereby sell, assign and set over absolutely, all my right, title and interest in and to a certain contract between myself (the undersigned) made about June 16, 1891, and the Dubuque Specialty Machine Works, which according to said contract, the said Dubuque Specialty Machine Works were and are to pay myself, order or assigns, out of the first net earnings of said Company, the sum of Fourteen Thousand Dollars, one-half of said amount, was assigned to Hillis, my attorney as trustee. I hereby agree to get said assignment cancelled as soon as I return to Chicago, and hand to the assignee, Mr. P. J. Lee, to whom this assignment is made for his own use." Lee paid $1,500 for this assignment, and afterwards sold one-half of whatever interest he then had in the contract

to Dillon for $750, which sum he was paid. Dillon divided his interest among several stockholders, and in June, 1894, or 1895, the then owners of the interest first obtained by Lee, including Lee himself, executed the following assignment to the corporation: "We, the undersigned, purchasers from Mr. A. F. Smith, of an one-half interest in his claim for $14,000, to be paid him from the first net earnings of the Dubuque Specialty Machine Works, under his original contract with said Company, hereby agree to turn over to the said Dubuque Specialty Machine Works, all our right, title and interest in the said claim, on payment to us of such sums as we have paid therefor, with interest at eight (8) per cent."

We set these two transfers out for the purpose of showing their precise language. It is evident from the latter and from the testimony that all parties treated the assignment from Smith to Lee as transferring only one-half of the obligation, and that whatever interest he obtained thereby he afterwards sold to Dillon and to the corporation; and it further appears that he received full repayment of all that he paid therefor, with interest. As we read and understand the record, at the time Lee took the assignment Smith owed the bank or him but $1,500 principal, and some interest, perhaps, on the $500 note given by Smith. Whether Lee afterwards let Smith have more than $100 is not entirely clear to us, but we are of opinion that the record fails to prove that he loaned him a larger sum. But however this may be, we are convinced that Lee is not entitled to hold the $2,000 discount which he obtained from Hillis when he purchased his interest in the contract. He was then the treasurer of the corporation and one of its directors, bound by every legal and moral principle to act openly and in perfect faith in every transaction affecting its interest and the interest of its stockholders. Yet notwithstanding this, he attempted to speculate in its obligations; relying, as he said, upon his influence with his fellow directors not only to save

himself from loss, but to make a large gain. This surely was not just to the stockholders or to the corporation. If it cannot be said, as a matter of fact, that he actually used the corporation's money to pay Hillis, it is nevertheless true that the purchase was secretly made, and that he secretly and without authority paid himself the entire amount outstanding on the obligation, from the corporate funds held by him as treasurer. The record does not show an approval of this conduct by the directors. True, it appears that he reported in September that he had paid the claim, but to whom, or in what amount, or when, was not divulged to the directors; and it was at a subsequent meeting of the board that the true nature of the transaction was first learned, and then only upon inquiry. Perhaps Mr. Lee did not intend to perpetrate a fraud upon the corporation, but the result of his acts had that effect, and he cannot be permitted to profit thereby. 2 Cook on Stockholders, section 660 (3d Ed.); *Bulkley v. Whitcomb,* 121 N. Y. 107 (24 N. E. Rep. 13); *Davis v. Mining Co.,* 55 Cal. 359 (36 Am. Rep. 40); *James v. R. Co.,* 6 Wall. 752 (18 L. Ed. 885); *Thomas v. Sweet et al.,* 37 Kan. Sup. 183 (14 Pac. 545).

We reach the conclusion that the defendant Lee is liable to the corporation for the sum of $2,000, with interest thereon from September 4, 1895, at 6 per cent. per annum, for which sum the plaintiffs will have judgment, with costs. — *Reversed.*