MURRAY BROS. & WARD LAND COMPANY, Appellant, v. CHAS. V. KEESEY et al., Appellees.

FRAUD:  Representations of Value.  False assertions of value, made 1  for the purpose of being relied upon as a *fact*, and so relied upon, furnish basis for rescission of contracts.

SPECIFIC PERFORMANCE:  Contract to Convey Lands Which Embrace Homestead.  A contract to convey lands embracing an unadmeasured homestead may not be specifically enforced against the protest of the wife, when such contract is executed by the husband only, unless the one demanding such performance elects to take a conveyance exclusive of the homestead.

SPECIFIC PERFORMANCE:  Vendor Without Title—Subsequent Acquisition.  One seeking specific performance of a contract for an exchange of lands must have title to his own lands, or at least some enforceable contract for title, *when the contract is made.*  Subsequent acquisition of title will not suffice.

VENDOR AND PURCHASER:  Statement of Grounds of Rescission —Mending Hold.  One who assigns specified grounds for rescission may not later "mend his hold" and assign other or different reasons; but this rule is not applicable to a ground of which the one rescinding had no knowledge at the time he did rescind.

FRAUD: Examination of Property—Effect.  The fact that the one alleging fraudulent representations in the execution of a con-

tract for the exchange of properties *makes an examination of the property which he is to receive*, does not necessarily preclude reliance upon the fraudulent representations.

*Appeal from Dallas District Court.*—LORIN N. HAYS, Judge.

FEBRUARY 16, 1918.

REHEARING DENIED MAY 17, 1918.

SUIT in equity for specific performance of a contract to convey real estate. Decree and judgment for defendant. Plaintiff appeals. The facts are stated in the opinion.— *Affirmed.*

*Don R. Lehman, E. W. Dingwell,* and *E. J. Kelly,* for appellant.

*White & Clarke,* for appellees.

STEVENS, J.—I. On the 26th day of August, 1915, plaintiff and the defendant Charles V. Keesey entered into a written contract whereby plaintiff agreed to convey to defendant a section of land in Cass County, North Dakota, for an expressed consideration of $56,750, to be paid by defendant's assuming and agreeing to pay mortgages amounting to $23,000, and the conveyance to plaintiff of a 305-acre tract located in Dallas County, Iowa, subject to a mortgage of $12,000. On December 7, 1915, defendant's attorneys wrote plaintiff that he elected to rescind the contract, upon the ground that same was procured by fraud. This action is brought to compel the specific performance of the contract. The petition is in the usual form for such purpose, and alleges that the defendant Alta Keesey is the wife of her codefendant.

The defendant Charles V. Keesey answered, admitting the execution of the contract, and alleged that plaintiff, through Charles Murray, its agent, represented to him, before the contract was entered into, that the Dakota land be-

longed to him, and that he knew the cash market value of the same, and that same was $56,750; that said land, a portion of which appeared to be wet, was well and sufficiently drained by ditches along the highways; that plaintiff was not, at the time of the execution of the contract, nor since, the owner of, or possessed of any right or title in and to, the Dakota land, all of which, it is alleged, was unknown to the defendant at the time the contract was executed; that, at the time of the execution thereof, defendant was a farmer, residing in Dallas County, and wholly unacquainted with real estate values in the neighborhood of the Dakota land and of the land purchased; that, in truth and in fact, the land was not worth to exceed $60 per acre; was not properly drained, but was wet and unfit for cultivation. The answer also contained all the necessary allegations of fraud. Defendant further alleged in his answer that he and his co-defendant resided upon the Dallas County farm, at the time of the execution of the contract, and still resided thereon, and that same is the homestead of defendants. Defendant alleged also, by way of counterclaim, that, at the time of the execution of the contract, he executed to plaintiff a note for $6,000 as earnest money, which plaintiff transferred to an innocent holder, and which defendant was compelled to pay, and asks judgment against the plaintiff for the said $6,000 with interest.

The defendant Alta Keesey, for separate answer, in substance adopts the material allegations of her husband's answer, and alleged that the Dallas County land was the homestead of herself and husband, which had never been ad-measured or set off from the rest of the tract, and that the contract was invalid. Other issues tendered by the pleadings need not be set out in detail.

The plaintiff company, of which Charles Murray was president, was, at the time of the transactions in question, in the real estate business in Minneapolis, Minnesota, and

Castleton, North Dakota, near which latter place the land, in question is located. At the time of the execution of the contract, plaintiff was not the owner of the land, but claims to have had an option for the purchase thereof. The alleged option contract, however, was a letter from Woods & Hallam and F. J. Lahl, giving to plaintiff the exclusive authority, as agent, to sell the real estate.

On January 25, 1915, William M. Miller and wife, by warranty deed, conveyed said premises to W. H. Woods and F. M. Hallam for a consideration of $40,000, and on November 3, 1915, William Hamilton Woods, F. M. Hallam, and F. J. Lahl, of Monmouth, Illinois, and the plaintiff herein, by Frank C. Murray, its agent, entered into a written contract, by which the parties named agreed to convey the Dakota land to plaintiff, at an expressed consideration of $61 per acre, on the basis of 635 acres; and, on December 1, 1915, William M. Miller and wife executed a warranty deed conveying the Dakota land to Charles V. Keesey, defendant herein, for an expressed consideration of $57,200. When offered in evidence, the following was endorsed on the back thereof: "This deed not used and to be cancelled or discharged;" and on January 15, 1915, William M. Miller and wife conveyed said premises to Joseph W. Sullivan, for an expressed consideration of $57,200; and on January 17, 1916, the said Joseph W. Sullivan and wife executed a warranty deed conveying said Dakota land to plaintiff.

Defendant claims that he was induced by one Duff, a local agent of plaintiff in Dallas County, to accompany him to Minneapolis for the purpose of negotiating a sale or exchange of his farm. Upon his arrival, he met some of the members of plaintiff's firm, but had no conversation with them concerning the land, and went from there with defendant to Castleton, where they met Charles Murray, and, accompanied by him, looked at various tracts of land, including that described in the contract.

Plaintiff testified that Murray told him that the land belonged to him; that he was familiar with its market value, and that it was worth $100 per acre, and would sell any time for $90 per acre, the price finally agreed upon; that, while the land was level and a portion of it apparently wet, it was sufficiently drained by the ditches along the highway, and that same was in good condition for cultivation, and as well drained as any land adjoining it, a portion of which, he stated, could not be bought for less than $125 per acre, and that a quarter south of it had sold for $103 per acre. Defendant further testified that he was not familiar with the land in question nor with other land in that vicinity or its value; and that nothing further was done by Murray or Duff to prevent independent inquiry and investigation on his part as to the value and quality of the land, except that he was kept consistently in their company, either looking at land or at the hotel for meals.

Charles Murray, in substance, denied the alleged fraudulent representations, and it might be urged from his testimony that defendant acted upon his own judgment, wholly uninfluenced by anything that was said to him by Murray concerning the land. Both plaintiff and defendant offered evidence of the value of the Dakota and the Dallas County land. As usual, the witnesses varied considerably in their judgment as to market values. Each side called six witnesses, those called by plaintiff fixing the value of the Dakota land at from $75 to $100 per acre; whereas defendant's witnesses testified that it was worth from $65 to $80, only one of whom, however, placed its value above $65. Plaintiff's witnesses fixed the value of the Dallas County land at from $120 to $125, the majority favoring the latter estimate; whereas defendant's witnesses testified that this land was worth from $135 to $140 per acre, the latter figure being the one favored by the majority. Murray did not testify as to

the value of the Dakota land, and the defendant testified that his land was worth $140 per acre.

As we understand the evidence, some time after the contract in question was executed, plaintiffs entered into a contract for the purchase of the Dakota land from Woods, Hallam, and Lahl, at an agreed consideration of $61 per acre, on the basis of 635 acres.

Most of the legal questions discussed by counsel are ruled by a long line of prior decisions of this court, and we will not, therefore, go into much detail in the discussion thereof. We have stated the testimony, in substance, upon which the defendant relied to establish the allegation of fraud contained in his answer.

It appears from the record that defendant is a farmer, about 44 years of age, and that he has owned and sold or traded several tracts of real estate, prior to the transaction in question; but there is no evidence that he was familiar with the Dakota land or its value, and he testified that he was without any knowledge on this point. Murray and Duff drove him around the section, giving him an opportunity to observe its general appearance, and he seems to have discovered that a portion of it appeared to be wet. He testified that some of it was covered with weeds, and that the ditches in the highway were obscured thereby. He called the attention of Murray to the appearance of the land, and says Murray told him it was sufficiently drained by the ditches along the highway. He further testified that he believed the statements and representations of Murray as to the value and quality of the land and its facilities for drainage, and was induced thereby to purchase the same. We think the evidence quite conclusively shows that the land was not worth to exceed $60 to $65 per acre; and it is conceded that plaintiffs entered into a contract with the Illinois parties, after the execution of the contract in question, for the purchase of the land at an agreed consideration of $61

1. Fraud: repre-
sentations of
value. per acre. It is, however, earnestly argued
by counsel for appellant that the statements
and representations of Murray were expres-
sions of opinion only; but it is evident from the whole record
that they were intended otherwise, and that the defendant
understood that plaintiff knew the market value of the land,
and that he made statements and representations as facts,
intending defendant to believe and rely thereon. We have
recently reviewed the authorities upon this question, and it
is unnecessary to refer thereto at length.

It was said by us in *Hetland v. Bilstad,* 140 Iowa 411,
that "statements of value or of quality may be made with
the purpose of having them accepted as of fact, and, if this
is done and so relied on, they are to be treated as the
parties designed they should be, namely, representations of
fact." See, also, *Hise v. Thomas,* 181 Iowa 700, and cases
therein cited.

The trial court found that defendant was induced to en-
ter into the contract by the fraudulent representations of
Charles Murray, the agent of plaintiff; and, upon a care-
ful reading of the record, we reach the conclusion that its
finding is fully sustained thereby. The statements and rep-
resentations of Murray as to the value of the Dakota land
are shown to have been wholly false; and that they were
known by him to be false is abundantly established by the
evidence. It was shown that plaintiff maintained an office
at Castleton, near the land, and was, at the time, authorized
to sell the same at $60 or $61 per acre. The advantage ob-
tained by plaintiff in the transaction was very large, and
the trial court found that the contract was unconscionable.
We are not disposed to disturb the finding of the district
court upon this question, or its finding that the transaction
upon the part of plaintiff was fraudulent.

II. Counsel for appellant practically concede that, un-
der Section 2974 of the Code, and the holding of this court

in *Ormsby v. Graham,* 123 Iowa 202, 212, *Townsend v. Blanchard,* 117 Iowa 36, *Wheelock v. Countryman,* 133 Iowa 289, and other cases, the conclusion of the trial court was right that, in the absence of an election upon the part of plaintiff to accept a conveyance of the land, exclusive of the homestead, the court could not enforce a decree for specific performance of the contract to convey; but, in avoidance thereof, counsel argue that the contract did not bind defendant to convey the Dallas County land in exchange for the Dakota section, and that the contract, when rightly construed, does not provide for an exchange of properties, but that the sale of the Dakota land was for cash, with the option to defendant to convey the land in lieu of the payment thereof.

2. SPECIFIC PERFORMANCE: contract to convey lands which embrace homestead.

We need not set out the particular provision of the contract referred to; but it is apparent from the record that both parties contemplated and intended an exchange of properties, and not a sale of the tract for cash. All of the negotiations between the parties contemplated that the defendant would convey the Iowa land, subject to certain encumbrances, in exchange for the Dakota tract, subject also to mortgage encumbrances. In view, however, of our conclusion that the contract was procured by the fraud of plaintiff, it is unnecessary for us to construe the same, and it is immaterial which construction should prevail. If the same were construed as a contract strictly for the exchange of properties, it could not be enforced, for the reason that plaintiff at no time elected to accept a conveyance thereof, exclusive of the homestead; and, if construed in accordance with the contention of counsel for appellant, its fraud in the procurement of the contract is conclusive against it.

III. The record title to the Dakota land, at the time the contract was entered into, was in one Miller, who resided at Monmouth, Illinois; and plaintiff did not acquire

same until the 17th day of January, 1916. We have frequently held that a party who did not have title to the land when the contract was made, cannot maintain an action for specific performance by subsequently obtaining title thereto. *Luse v. Dietz*, 46 Iowa 205; *Ormsby v. Graham*, supra; *Gossard v. Crosby*, 132 Iowa 155; *Luttschwager v. Fank*, 151 Iowa 55; *Monroe v. Crabtree*, 178 Iowa 546; *Olson & Nessa v. Rogness*, 173 Iowa 331. The case last cited recognizes the exception that, if the purchaser knows that his vendor does not have title when the contract is made, but expects to procure it later, the purchaser cannot avoid specific performance on that account if the seller obtains title before the time has arrived for the consummation of the contract. Counsel for plaintiff insist that it had an option contract for the purchase of the land such as a court of equity would enforce in an action for specific performance; but the trouble with this contention is that the evidence fails to show plaintiff possessed of any such contract. The instrument relied upon gave plaintiff exclusive authority to sell the land, but contained no agreement to convey the same to plaintiff, or of plaintiff to purchase it. Subsequent to the execution of the contract herein, plaintiff entered into a contract with some Illinois parties, who claimed to have an unrecorded deed to the land; but, as plaintiff had no title or interest whatever in the land, the contract was, as found by the trial court, wholly without mutuality. On the other hand, plaintiff testified that Murray told him the land belonged to him. This is denied, and we need not go into the question of the weight of the evidence in reference thereto.

It is also contended by counsel for appellant that defendant is estopped to plead this or other defense except that of fraud, for the reason that, in the letter written by

defendant's attorneys to plaintiff, attempting to rescind the contract, the ground stated therefor was that same had been obtained by misrepresentation. The misrepresentations relied upon were not stated, and it is not shown by the evidence that defendant, at that time, knew that plaintiff was not the owner of the land; and the only thing in the entire record in any way tending to charge him with notice thereof is the provision of the contract by which plaintiff agreed *to convey, or cause the Dakota land to be conveyed,* to the defendant. It does not appear, however, that defendant's attention was called to this provision of the contract, or that its purpose or meaning was in any way discussed between the parties.

4. VENDOR AND PURCHASER: statement of grounds of rescission: mending hold.

The facts do not bring the case within the exception noted, nor do they support the alleged estoppel. The rule contended for by counsel for appellant has often been applied; but, for reasons already stated, it cannot avail upon this appeal.

IV. In compliance with the terms of the contract, defendant, at the time of its execution, gave plaintiff his note for $6,000, as earnest money to be returned to him when the deeds were exchanged; but plaintiff negotiated said note to a bank in Illinois, which brought suit thereon against him in the Federal court, and defendant paid same before judgment. The court awarded him judgment for the amount of said payment, with interest on his counterclaim. Complaint is made by counsel for appellant of this ruling of the court; but it is frankly conceded by them that, if there were fraud in the inception of the contract, the judgment of the court was proper. It is, therefore, unnecessary for us to discuss this question.

Other questions are discussed by counsel, but we omit reference thereto, for the reason that the matters above considered are decisive of the case. It is probably true, as

**5. FRAUD: examination of property: effect.** counsel claim, that defendant could have inquired concerning the value and quality of the Dakota land, and it also appears that he saw it and observed that a portion thereof appeared to be wet; but he was not encouraged by Murray or Duff to make an independent investigation until after he had signed the contract, and it may well be assumed that plaintiff's agent knew that defendant was not then likely to make inquiry or investigation touching the subject of the contract. In our opinion, the defendant was not negligent in failing to make inquiry concerning the quality or value of the land, and plaintiff is in no position, after obtaining an advantage in the transaction of upwards of $15,000, to charge him with negligence in believing and relying upon his representations as to said matters.

We have carefully read the entire record, and are convinced that the judgment of the trial court is right. It is, therefore,—*Affirmed.*

PRESTON, C. J., LADD and GAYNOR, JJ.,concur.