H. L. KURTZ et al., Appellees, v. AUGUST GRAMENZ, Appellant.

**JUDGMENT:** Conclusiveness—Issue of Fraud. A decree in an action 1 by a vendee to rescind a contract of purchase, to the effect that the contract was not fraudulently obtained, is an absolute bar to the presentation of the same issue in a later action by the vendor for specific performance.

**JUDGMENT:** Conclusiveness—Matters Not in Issue. A decree in an 2 action instituted by a vendee, prior to the time of performance, to rescind the contract of purchase, to the effect that the contract was not induced by fraud, is not an adjudication of any fact which the *vendor* must prove in a subsequent action for specific performance: i. e., that the vendor had title to the premises.

**VENDOR AND PURCHASER:** Performance of Contract—Merchant- 3 able Title. Principle reaffirmed that a "merchantable title" is one which a reasonably prudent person, familiar with the facts and apprised of the question of law involved, would accept in the ordinary course of business.

**COVENANTS:** Breach—Contract for Drainage Right. A covenant 4 against incumbrance is not breached by a contract which gives a party the right to connect his tile with tile on the land in question.

**VENDOR AND PURCHASER:** Want of Mutuality—Nonavailability of
5 **Plea.** The plea of want of mutuality in a contract for the convey-
ance of land because only a part of the parties interested in the
land signed the contract is not available to a vendee after the ven-
dor has tendered a deed executed by all interested parties.

**SPECIFIC PERFORMANCE:** When Matter of Right. Specific per-
6 formance of a nonfraudulent contract entered into by competent
parties is a matter of right,—at least in the absence of a very per-
suasive reason to the contrary.

*Appeal from Webster District Court.*—G. D. THOMPSON, Judge.

APRIL 1, 1924.

REHEARING DENIED JUNE 28, 1924.

ACTION by vendors for the specific performance of a con-
tract for the purchase of certain real estate. Various defenses
were interposed by the vendee, which are considered in the opin-
ion. A decree was entered as prayed in plaintiffs' petition, and
the defendant appeals.—*Affirmed.*

*H. W. Stowe* and *Mitchell & Files,* for appellant.

*Healy, Thomas & Healy,* for appellees.

FAVILLE, J.—On May 7, 1920, appellees, as vendors, entered
into a written contract with appellant, as vendee, for the pur-
chase and sale of 240 acres of land in Chickasaw County, Iowa.
The contract provided for a cash payment,
which was made, and for deferred payments and
execution of mortgages. It also provided that
final settlement was to be made on March 1, 1921, at which time
the vendor was to execute and deliver to the vendee a deed with
the ordinary covenants of warranty, together with an abstract
of title showing good and merchantable title to the premises,
subject to mortgages which were to be assumed by the vendee.

On or about October 4, 1920, appellant herein instituted an
action in equity in the district court of Webster County against

1. JUDGMENT: con-
clusiveness:
issue of fraud.

the appellees herein for a rescission of the said contract, on the ground of false and fraudulent representations in procuring the same, in regard to the distance that the real estate in question was located from the market town of Nashua, and also in regard to the condition of a road extending from said premises to said town. The cause was tried in the district court, and a decree entered dismissing the petition of appellant as plaintiff in said action; and on appeal to this court, the decree of the trial court was affirmed. *Gramenz v. Brown,* 194 Iowa 125.

The decision of the trial court in the instant case was announced and the decree in the rescission case prepared and signed on January 28, 1921, but it does not appear to have been filed of record until March 5, 1921.

On March 1, 1921, the date of settlement under the contract, appellees tendered to appellant a warranty deed, as provided by the contract, and also an abstract of title to said premises, and made formal demand on appellant for the performance of said contract on his part. Appellant made no objections either to the deed or the abstract as tendered, at that time, and, as he failed and refused to perform the contract on his part, this action was instituted on March 26, 1921.

Appellant pleaded, as an affirmative defense, that the contract in question was procured by false and fraudulent representations, being the identical matters which were the basis of the former action for rescission of the contract. Appellant also denied that appellees had tendered a deed and an abstract showing good and merchantable title, as provided in said contract.

Appellees, by reply, denied the fraud pleaded in the answer, and set up a plea of former adjudication as to said matter.

I.   Appellant contends that, under the evidence in the case, the court erred in not decreeing that the contract in question was obtained by false and fraudulent representations on the part of the agent of appellees.

The issue now tendered by appellant was the identical issue tendered by him in the action for rescission. It was therein adjudged adversely to him, and it was decreed that the contract in question was not obtained by false and fraudulent representations, as then claimed and as now contended by appellant.

Such adjudication is decisive of the question that the contract was not obtained by false and fraudulent representations, as claimed by appellant, and is *res adjudicata* as to that issue, as tendered in this action.

It does not necessarily follow therefrom that the adjudication of the validity of the contract in the former action entitles the plaintiffs to specific performance of the contract in this action. Courts of equity frequently refuse specific performance of valid contracts, and leave the complaining party to his right to a legal remedy for damages for a breach of such contract. *Burge v. Gough,* 153 Iowa 183. We will discuss the question of the right to specific performance of the contract in question in a later division of this opinion.

At this point, we hold that the question as to the invalidity of the contract because of the false and fraudulent representations claimed by the vendee, was adjudicated and finally determined in the former action for rescission, where the same issues were tendered and the same evidence offered in support thereof, and that appellees' plea of such prior adjudication as to said matters was well taken.

II. The contract required appellees to furnish appellant an abstract of title on March 1, 1921, showing ''good and merchantable title'' to said premises. An abstract was furnished and tendered on March 1, 1921. Appellant now contends that the abstract so tendered and offered in evidence on the trial did not show a good and merchantable title in appellees, and various alleged defects in said abstract of title are now pointed out and relied upon by appellant.

2. JUDGMENT: conclusiveness: matters not in issue.

Appellees contend that appellant cannot be heard to urge objections to the title at this time, because of the claim that it was appellant's duty to urge such objections at the time of the bringing of his action for rescission of the contract. Appellees contend that appellant, having sought to obtain a rescission of the contract on the ground of false and fraudulent representations, cannot, in this action, mend his hold in said respect, and cannot now urge, as an additional ground to avoid the contract, that there were defects in the title to the premises.

We cannot sustain appellees' contention in this regard. Appellant brought his original action to rescind and cancel the contract on the ground that it was obtained by false and fraudulent representations. This was prior to the time of performance. Whether or not the vendors might be in a condition to perform the contract at the time when performance became due was not involved in that case. The sole issue tendered was as to the validity of the contract itself, and not the question of the ability of the vendors to perform. In that action, it was determined that the contract was valid. Appellees are now seeking, in this action, a specific performance of that contract. They tendered performance on their part. It was incumbent upon them to establish their ability to perform. In order for them so to do, it was necessary for them to allege and prove the contract and their ability to perform according to its terms. Appellant had a right to defend against said action by denying the ability of appellees to perform the contract on their part according to its terms, without questioning its validity in any respect. The question of the duty of appellant to make timely objections, if such he had, to the abstract of title when tendered to him by appellees, and the question of his waiver of such objections, if any he had, to defects in the title, are not involved in this case, and we expressly reserve any expression of opinion in regard to the rights of either of the parties in respect to said matters. The case as presented by the petition is simply one where appellees seek specific performance of a written contract, and tender performance thereof.

The answer of appellant was not as specific and definite in regard to the issues he tenders as the same could have been made, but, as we construe the pleading, it was sufficient to tender for determination the issue as to whether or not appellees were able to perform the contract on their part by the execution and delivery of a good and sufficient warranty deed to the premises, and by the delivery of an abstract showing good and merchantable title thereto. It is, therefore, incumbent upon us to consider the question as to whether or not the abstract of title tendered by appellees to appellant, and offered in evidence, com-

3. VENDOR AND PURCHASER: performance of contract: merchantable title.

plied with the requirements of the contract; or, in other words, does it show a "good and merchantable title?" This necessitates an examination of each and all of the objections urged by appellant to the abstract of title. We have made such examination, and our determination extends to each of them, without an extended review thereof in this opinion.

In a general way, it may be stated that the objections now urged are wholly technical, and are not of a character to prevent the title from being "good and merchantable." Some of the objections urged are without merit because of the provisions of Section 2915 of the Code. Others come within the purview of Section 3447-b, Code Supplement, 1913, and other alleged defects, if they be such, could not now in any manner affect the title to said real estate, under the provisions of Chapter 270 of the Acts of the Thirty-eighth General Assembly, and other so-called "legalizing" acts.

A quitclaim deed by an interloper, dated May 25, 1860, on a portion of the property, could hardly be said to prevent the title from being good and merchantable. There is no suggestion that either the grantor or the grantee therein ever had any possession of the premises.

It appears that the mortgage dated April 5, 1876, is fully explained on the abstract itself, and that Section 3447-b of the Code Supplement, 1913, applies directly thereto.

The interest which the estate of Groom had in the premises is shown on the abstract to have been fully disposed of.

There is nothing on the abstract to show that the heirs of the William Pickett estate ever had any interest in the premises whatever.

We find nothing in appellant's contention of any defect in the showing on the abstract in regard to the Weller estate.

As previously stated, we have examined each and every objection urged by appellant, and have noted the foregoing only as illustrative of the objections urged, and that none of them are of a character to make it appear that the abstract did not show good and merchantable title.

In *Billick v. Davenport*, 164 Iowa 105, in referring to a merchantable title, we said:

"Such a title is said to be one which can again be sold to a reasonable purchaser, or mortgaged to a person of reasonable prudence as security for a loan of money. *Fagan v. Hook,* 134 Iowa 381. The test is whether a reasonably prudent man, familiar with the facts and apprised of the question of law involved, would accept such a title in the ordinary course of business."

In *Buchan v. German American Land Co.,* 180 Iowa 911, we said:

"While the law does not compel a purchaser to accept a doubtful title, there must be something more than a mere possibility that the title is defective. *Miller v. Cramer,* 48 S. C. 282 (26 S. E. 657). A threat or even a possibility of a contest will not be sufficient."

See, also, *Upton v. Smith,* 183 Iowa 588; *Fagan v. Hook,* supra.

In *Cappel v. Potts,* 192 Iowa 661, we said:

"The rule as to merchantable title, briefly stated, and as laid down in the cases, is that the test is whether a man of reasonable prudence, familiar with the facts and apprised of the questions of law involved, would, in the ordinary course of business, accept such a title as can again be sold to a reasonable purchaser."

Applying these well established rules to the instant case, it must be held that the abstract of title tendered to appellant, and offered in evidence by appellees in this case, showed a good and merchantable title, one which a man of reasonable prudence and familiar with the facts and questions of law involved would accept in the ordinary course of business.

III. One question affecting the title to said real estate, as shown by the abstract, is in regard to the contract executed by a prior owner of the premises to one Laydon, granting to the said Laydon the right to use for a drainage outlet a certain tile drain now in use and operation on said premises, and giving to said Laydon the right to connect a tile drain, not to exceed eight inches in diameter, with said tile, on the west line of said land, and to use said tile as an outlet for drainage from certain described lands.

4. COVENANTS: breach: contract for drainage right.

It is contended by appellant that the granting of this right to connect with the tile located on the premises in question and to flow water therethrough, as an outlet, was the grant of an easement, which is an incumbrance against the land covered by the contract. Appellant's contention is that the easement was of no benefit to the servient estate, and was granted to a private individual; that it was a burden to the servient estate, and became, as a matter of law, an incumbrance.

It is a matter of common knowledge that it is a benefit to a servient estate if surface waters that naturally flow thereon from a dominant estate are controlled in subterranean tile, and are conducted in said manner from the dominant estate and through the servient estate. As a matter of common information and of practical experience, the servient estate does receive a benefit by having such waters so conducted in tile under ground. It is a well known fact that the establishment of a complete tiling system of lands requires, very often, the crossing of boundary lines; and the reclamation of a vast area in this state, by the establishment of public and private drains, has been due to the fact that complete drainage systems have been constructed without regard to governmental subdivisions or boundary lines. This is essential in the very nature of the enterprise; and it is also true that in such cases the lower, or servient, estate does receive a direct benefit from the fact that the waters from the dominant estate are gathered in subterranean tile, and conducted by such tile across the servient estate. In any event, no damage resulted to the servient estate.

In *Stuhr v. Butterfield*, 151 Iowa 736, we said:

"Ordinarily, the ditch, whether of a drainage district or excavated through the land of joining owners as a private enterprise, is essential to the beneficial use of the land, and is no more likely to prove an injury thereto than a highway. The utility of such drains are universally admitted, and so generally are they regarded as beneficial that few, if any, scriveners in preparing deeds would be more likely to except them from the operation of a covenant against incumbrances than creeks and other streams flowing through the land conveyed. That they have not been thought to constitute breaches of covenants of

this kind is somewhat confirmed by the absence of any adjudications on the subject. The reasoning by which the exclusion of a highway from a covenant against incumbrances is peculiarly persuasive in justification of a like ruling with respect to drainage ditches and tiles, and we are of opinion that, as the design in excavating a drainage ditch is the permanent improvement of the land, and this results so uniformly therefrom that injury thereto is exceptional, and as ordinarily the character of the land is such that, but for the drainage afforded thereby, the vendee would not have purchased, he should be conclusively presumed to have taken all drains, as well as highways, into account in acquiring title. This is because essential to the full enjoyment and economic use of the land, and in this respect the existence of drainage ditches, private or public, and tile drains, as well as highways, are to be distinguished from those apparent easements which impair rather than enhance the enjoyment, and profitable enjoyment and use of the reality on which they constitute a burden.''

In *First Unitarian Society v. Citizens Sav. & Tr. Co.,* 162 Iowa 389, we considered the question as to whether a public sewer constituted an incumbrance, within the covenants of a warranty deed, and in said opinion we said:

''It will be noted, also, that the discussion in the *Stuhr* case is made to apply, not only to open ditches, but also to covered tile drains. Nothing less would be consistent. In a practical sense, it is hardly conceivable that a purchaser of real estate underlaid with covered tile drains could deem himself damaged thereby, as for breach of covenant against incumbrances. Such tile drains are usually laid at great expense, and to the great improvement of the property.''

In *Johnston v. Robertson,* 179 Iowa 838, we considered a case similar to the one at bar, involving a contract for the sale of real estate, and providing that title should be conveyed by a good and merchantable title. It was contended that the vendor could not convey by such title, for the reason that, at the time of the execution of the contract, there had been filed a petition, and proceedings were pending for the establishment of a levee district, and that thereafter such district was established and the

levee constructed, and part of said land was taken for the estab-
lishment of the dike and for obtaining earth and materials there-
for.   We therein said:

"So that the ultimate question is, Was the establishment of
this easement a taking or an incumbrance within the meaning
of the law, so as to constitute a breach of covenant of warranty
or a breach of contract promising conveyance and covenants of
warranty? The *Stuhr* case, supra, has answered this question in
the negative, and has thus fixed the law of this jurisdiction.
Whether the plaintiffs should have sued on their covenants or
warranty is a question we need not determine.   Apart from the
question of remedy, their ultimate rights are the same, whether
their suit be maintained on the contract or on the covenants.
For instance, if they had brought this action on the contract
before the warranty deed was executed or accepted, they would
have been confronted with the *Stuhr* case; and, if they were to
bring the action now upon the covenants, they would be con-
fronted in like manner."

See, also, *Barton v. Boie*, 169 Iowa 706.

The right acquired under the contract referred to in the
abstract, to connect with the tile on the land in controversy so
as to complete a drainage system and carry water through said
tile as an outlet, did not constitute an incumbrance upon the
land in question, nor did it prevent the abstract from showing
a good and merchantable title.

IV.   It is contended by appellant that the contract in ques-
tion is wanting in mutuality, in that the rights of the parties
were not reciprocal, and that it could not have been specifically

5. VENDOR AND
PURCHASER:
want of mutu-
ality: non-
availability of
plea.

enforced at the instance of the vendee, because
of the fact that the title to said described real
estate vested in the appellee Kurtz alone, and
that his wife and the other vendors did not sign
the contract for the sale of the premises.

The deed tendered March 1, 1921, was signed by Kurtz and
his wife, and no objection was urged thereto.   Furthermore, by
supplemental contract, entered into on the 23d day of February,
1921, appellant expressly waived any objections to the fact that
"the title in said land is in H. L. Kurtz."

The defense of want of mutuality, if at any time available to appellant, was not available as a defense to this action for specific performance, after the appellees had tendered a properly executed deed conveying full title to the premises in question to the vendee. We find no merit in appellant's contention at this point.

V. It is urged by appellant that the right to specific performance of a contract rests in the sound discretion of a chancellor, and that, even though the contract may not be set aside for invalidity in its inception, nevertheless, if it appears to have been tainted with fraud, or is grossly inequitable or unconscionable, a chancellor may deny the relief of specific performance, and remand the party to a remedy for damages at law.

6. SPECIFIC PER-
FORMANCE:
when matter of
right.

This identical question has been before us in the case of *Cohen Bros. Iron & Metal Co. v. Shackelford Brick Co.*, 197 Iowa 674, wherein we reviewed the authorities on said question.

In this case, the contract in question was entered into by competent parties. It has been adjudicated by the former action between these parties, that the contract was not obtained by false or fraudulent representations. There is no claim of inadequacy in the price. Appellant purchased the land in question advisedly, and without overreaching or fraud. If specific performance can be denied upon the record made in this case, then it could be denied in nearly any case of the sale of real estate where the vendee seeks to repudiate the contract. Specific performance is not a mere matter of grace on the part of the chancellor. It is a matter of right in a proper case, and is not to be denied where properly sought, unless some good reason is shown why it should be withheld. We find no such reason in the record in the instant case.

Upon an examination of the entire record, we reach the conclusion that the decree of the trial court was correct, and it is, therefore,—*Affirmed.*

ARTHUR, C. J., EVANS and PRESTON, JJ., concur.