W. J. VANDERWILT, Appellee, v. W. H. BROERMAN et al.,
Appellants.

APPEAL AND ERROR:   Decision in General—Avoidance of Technical
1   Remand.   The claim on appeal that an equitable action for the fore-
closure of a contract for the sale of real estate is premature, and
that judgment was rendered for the entire amount prior to its full ma-
turity, will be disregarded on the *de novo* review on appeal, when
it then appears that the entire amount is due and unpaid, and that
no plea in abatement of the action, or other objection because of
prematurity, was made in the trial court.

VENDOR AND PURCHASER:   Performance of Contract—Noneffectual
2   Novation.   A purchaser of land wholly fails to establish a release
from his obligation to the vendor by a mere showing that he as-
signed the contract to another, who assumed and agreed to carry
out the obligation of the original contract.

VENDOR AND PURCHASER:   Remedies of Vendor—Action to En-
3   force Contract—Tender of Conveyance—Sufficiency.   Tender of a
deed is not a condition precedent to the beginning of an equitable
action by a vendor to enforce a contract for the sale of land.   A
tender in the petition is all-sufficient.   (See Book of Anno., Vol. 1,
Sec. 9449, Anno. 37.)

VENDOR AND PURCHASER:   Merchantable Title—Abstract—Waiver
4   of Timely Delivery.   Timely delivery of an abstract of title in ac-
cordance with the terms of the contract is waived (1) by not tak-
ing the abstract when tendered, (2) by going into and remaining
in undisturbed possession of the land, and (3) by so using the
land that the status quo cannot be restored.

MORTGAGES:   Release—Change in Name of Mortgagee—Presumption.
5   A recital in a formal release of a mortgage, to the effect that the
mortgagee has, by proper amendment to its articles of incorpora-
tion, changed its name to the name indicated by the one executing
the release, will be deemed presumptively true.

**VENDOR AND PURCHASER:** Performance of Contract—Merchantable **Title**—**Belated Objections.** Objections to a land title as shown by the abstract introduced at the trial, not made until after the entry of the decree, will be ignored.

**APPEAL AND ERROR:** Review—Failure of Cross-Petitioners to Appeal **Between Each Other.** Defendant cross-petitioners in an action to enforce a contract for the sale of land, *among whom judgments have been rendered on assignments and assumption of the contract sought to be enforced,* may not have such judgments reviewed by simply appealing from the judgment rendered in favor of plaintiff. (See Book of Anno., Vol. 1, Sec. 12834, Anno. 14 *et seq.*)

**VENDOR AND PURCHASER:** Construction of Contract—Nonmutuality. Record reviewed, and held that a contract was not nonmutual because of the existence of a mortgage on the land.

**Headnote 1:** 39 Cyc. p. 1849. **Headnote 2:** 39 Cyc. p. 1870. **Headnote 3:** 39 Cyc. p. 1850. **Headnote 4:** 39 Cyc. p. 1527. **Headnote 5:** 27 Cyc. p. 1419. **Headnote 6:** 39 Cyc. p. 1525. **Headnote 7:** 4 C. J. p. 696. **Headnote 8:** 13 C. J. p. 339.

*Appeal from Mahaska District Court.*—D. W. HAMILTON, Judge.

JANUARY 19, 1926.

REHEARING DENIED APRIL 9, 1926.

SUIT by vendor against the vendee and his assignees, to compel performance and to foreclose contract for purchase of land, and for judgment for the purchase money, and cross-petitions by the vendee against his and later assignees, and by the several assignees against their respective assignees for judgment in favor of plaintiff in the cross-petition, against defendants in the cross-petition, for the amount of any judgment that may be rendered in favor of the plaintiff in the action against the plaintiff in the cross-petition. Decree for the plaintiff in the original suit, and for the plaintiffs in the various cross-petitions. The defendants appeal.—*Affirmed.*

*C. C. Orvis* and *R. J. Woodard,* for W. H. Broerman, appellant.

*L. E. Corlett,* for Lester Butler, appellant.

*Devitt & Eichhorn,* for Charles Victor and Charles Dillard, appellants.

*Irving C. Johnson* and *McCoy & McCoy,* for John Kaldenberg, appellant.

*W. H. Keating* and *Thomas J. Bray,* for appellee.

MORLING, J.—Under date of May 23, 1919, the plaintiff Vanderwilt contracted to sell to defendant Broerman the premises described, for $28,400, payable $1,500 by note due March 1, 1920, and the balance, $26,900, March 1, 1925, with right to vendee to make earlier payment, the deferred payment to bear interest at 5½ per cent, payable annually. Possession was to be given to vendee March 1, 1920, and deed to be delivered on or before March 1, 1925, or "when above payments are fully made."

"Merchantable abstract of title to said premises to be delivered by first party to second party showing merchantable title in first party on or before the first day of January, 1920, and second party shall have 10 days for examination of said abstract, said examination to be in writing and any defect not specifically set out shall be deemed waived and first party shall have a reasonable time to correct any such defect and the abstract shall be continued to show such correction or amendments."

The contract contained the ordinary forfeiture and time of essence clause, and provided that all covenants and agreements therein contained should extend to and be obligatory upon the heirs, executors, and assigns of the respective parties.

In the duplicate received by the vendee, Broerman, May 1, 1920, instead of January 1, 1920, was specified as the ultimate date for delivering abstract.

Vendee Broerman assigned the contract to defendant Butler, February 20, 1920. Butler assigned to defendant Victor, March 1, 1920, Victor to defendant Kaldenberg, March 15, 1921, Kaldenberg to defendant Dillard, March 22, 1921. Butler paid the $1,500, March 1, 1920; Victor paid the interest due March 1, 1921. Broerman personally never was in possession. But Victor took possession on March 1, 1920, and he and his as-

signees had possession of the land until it was leased for the year beginning March 1, 1923, pursuant to stipulation in this suit made for the benefit of all persons found entitled to receive the rents. This stipulation was made April 19, 1922. The plaintiff testifies that Victor tore up the hay land, broke the pasture, "and put all in corn,—been in corn ever since, for four years, and needs a change. There are good hedge posts there, very valuable posts, and Charles Victor cut them off and took them home to his home farm. He * * * hauled a lot of stuff home off of the eighty. The place has been ruined." This is not disputed. There is no evidence that the contract was ever rescinded or possession returned to the plaintiff, or that the status quo was or could be restored. At the trial, plaintiff amended, to conform to the proof, by pleading waiver. In answer to this amendment, Broerman alleged that, upon plaintiff's failure "to perform his part of the said contract, that this defendant rescinded his interest in the said contract with the plaintiff and all his interest in said contract, and the said defendant alleges that he assigned any interest, right, or title in the said premises at that time, and disclaims any interest in said premises on and after the first day of May, A. D. 1920."

Dillard answered the amendment, saying that he "tenders possession of said property to said plaintiff, and makes this offer to surrender possession and to permit the plaintiff to have the rents and profits that have accrued on said farm during the time that the same has been leased by the attorneys, respectively, for the plaintiff and the defendant."

Plaintiff testifies that his abstract of title was in the office of his attorney all the time, and that there was never any attempt to present it to any of the defendants; that he supposed the abstract was to be delivered when the land was paid for, and did not intend to deliver it before that time. None of the defendants ever asked him for the abstract. There was, on the date of the contract, a $20,000 mortgage against this land and other land, to the First Joint Stock Land Bank of Chicago. He says that Attorney Johnson, at whose office deed was to be delivered, drew the contract, and that, at the time, he (plaintiff) told them about the mortgage, and that just as soon

as they paid the contract the mortgage would be released; that Broerman said that was all right. Broerman denies this conversation, or that he knew anything about the mortgage until after this suit was brought. The plaintiff, at the trial, produced a release of the mortgage, and tendered it into court, with the recording fee.

Plaintiff left his contract and the matter of looking after it with his attorney, Mr. Keating, who was also an abstracter. Mr. Keating says that he prepared the abstract for this piece of land and for another (Smith) piece that Broerman was purchasing, and told Broerman, in January, 1920, that he had both the abstracts ready; that Broerman said he doubted very much if he would ever be able to carry out the Vanderwilt contract; wanted to be sure about the Smith abstract, but "the other [Vanderwilt] abstract, it was a loan through the Joint Stock Bank, and he wasn't so particular whether that was examined right then." Keating says that he examined the title to the Smith land for Broerman and gave him a written opinion on it. This opinion is in evidence, and is dated February 1, 1920.

Broerman says that the arrangement by which he assigned the contract was made the fall before. Mr. Broerman evidently considered that he had no particular interest in the contract after he arranged, in the fall of 1919, to turn it over to Butler. His recollection is quite vague; and, while Mr. Keating did not have a clear recollection of all the details, we are satisfied that the facts are, in substance, as he testifies.

No demand was ever made by any of the defendants for an abstract, and no question was ever raised about the title until the introduction of evidence on the trial was in progress, further than that the plaintiff alleged, in general terms, ability to perform, to which defendants filed a general denial.

The petition was filed June 17, 1922. The defendants, except Dillard, filed separate answers in April and May, 1923, and on September 20, 1923, filed cross-petitions, each against his and subsequent assignees (not against the plaintiff), setting up their and later assignments, each claiming that his and subsequent assignees be decreed to perform all of the conditions of

any decree rendered against the cross-petitioners. On November 27, 1923, Dillard answered, stating that he took possession of the property under defendant Kaldenberg, and continued to rent and occupy until March 1, 1923, when the lease under stipulation referred to was made. This is the answer that includes the paragraph previously set out. Each defendant appeared by separate attorneys. Their answers and cross-petitions were separate. The only appeal shown is that all of the defendants perfected their appeal by serving notice on plaintiff and the clerk. In this court Broerman files separate argument, adopting in part and disputing in part the joint argument filed by the other defendants.

I. It is contended that the suit is premature, because the first payment was made, and the deferred payment was not due until March 1, 1925. The contract provided for the payment of interest annually. We assume that the interest would begin March 1, 1920, rather than at the date of the contract. When suit was brought, one installment of interest was due and unpaid. Before it was tried, a second had become due, and was unpaid. Before the case reached this court, a third one was due and unpaid; and before it was submitted here, the entire amount was due. The plaintiff's petition claimed judgment for the entire amount of the contract, principal, and interest. The case was tried on its merits. No question of immaturity of any of the amount claimed was raised in the lower court.

Sections 4297 and 4293 of the Code of 1897 are as follows:

"Sec. 4297. In cases where the vendor of real estate has given a bond or other writing to convey the same on payment of the purchase money, and such money or any part thereof remains unpaid after the day fixed for payment, whether time is or is not of the essence of the contract, the vendor may file his petition asking the court to require the purchaser to perform his contract, or to foreclose and sell his interest in the property."

"Sec. 4293. If there are any other liens on the property sold, or other payments secured by the same mortgage, they shall be paid off in their order. And if the money secured by

any such lien is not yet due, a rebate of interest, to be fixed
by the court or judge thereof, must be made by the holder, or
his lien on such property will be postponed to those of a junior
date, and if there are none such, the balance shall be paid to the
mortgagor.''

The plaintiff had the right to foreclose, and to personal
judgment for the interest installments due. *Tupple v. Viers,* 14
Iowa 515; *Boynton v. Salinger,* 147 Iowa 537. On foreclosure
for the interest, the proceeds would be applied on the indebted-
ness due or to become due, as far as it would go. *National Bank
of Battle Creek v. Dean,* 86 Iowa 656. The proper method of
raising the objection of immaturity of cause of action is by plea
in abatement. *Harrison v. Hartford Fire Ins. Co.,* 102 Iowa 112;
*Bohanan v. Bohanan,* 150 Iowa 182; *The Telegraph v. Lee,* 125
Iowa 17; *Thompson v. Yousling,* 196 Iowa 363. The cause is
triable here *de novo* to the extent to which the appeal has been
taken. We might remand the case, with permission to file sup-
plemental pleadings and enter a new decree (*Dierksen v. Pahl,*
194 Iowa 713, 719), but no useful purpose would be served by
this course. For these various reasons, we will not interfere
at this time with the decree on the ground of immaturity of the
principal and part of the interest of the debt at the time the
decree was rendered. See *Shult v. Doyle,* 200 Iowa 1.

II. Broerman contends that plaintiff accepted Broerman's
assignees as "paymaster," and therefore he is released. Broer-
man testifies that his assignees stated that, if he would take
their interest in a horse which they owned
jointly, they would take the farm, and assume
his obligation to plaintiff. He says he had no
right to the farm after that. Plaintiff testifies
merely:

2. VENDOR AND
PURCHASER:
performance of
contract: non-
effectual nova-
tion.

"At the time Victor took possession of the farm, March
1, 1920, I knew he had an interest in the farm. He told me
so, and I accepted him as paymaster. * * * So far as I was
concerned, I intended to hold the party, whoever paid me.
* * * I didn't intend to hold anyone in particular,—whoever
paid me.''

Broerman has failed to show that he has been released.

III. Objection is made that the plaintiff did not offer to

convey, before bringing the action. He was not required to do so. *Huie v. Falde,* 197 Iowa 289. As will be noted later, the suit

3. VENDOR AND
PURCHASER:
remedies of ven-
dor: action to
enforce con-
tract: tender of
conveyance:
sufficiency.

is under the statute against the vendee in possession, to foreclose. If it were strictly a suit for specific performance, still plaintiff offered in his petition to perform. The suit is in equity. A previous tender in such a case was not required. The court could so mold its decree as to protect the interests of all. *Boynton v. Salinger,* 147 Iowa 537.

IV. It is objected that abstract of title was not furnished within the time required by the contract, and that the one offered at the trial does not exhibit a marketable title. As has been

4. VENDOR AND
PURCHASER:
merchantable
title: abstract:
waiver of timely
delivery.

stated, the vendee Broerman was offered the abstract of title before the time for delivering possession arrived, but did not take it or have it examined. His assignee took possession of the land at the time stipulated. He and later assignees have had the full enjoyment of the premises, undisturbed and unquestioned, up to the time that it was leased under the stipulation for the benefit of all parties concerned. The vendee never claimed or attempted any rescission *in pais.* His statement in his answer filed during the trial, that he rescinded, is wholly unsupported. Dillard's mere tender of possession of the property, as the record stands here, amounts to nothing. · All of the defendants were interested in the matter of rescission, and, as will appear, are precluded by the decree, as between themselves, from claiming a rescission. The vendee has made no offer to restore the status quo, and, on the undisputed evidence, cannot do so. No claim is made for equitable rescission, and, if made, it could not, on this record, be maintained. The defendants cannot, while in the undisputed possession and enjoyment of the fruits of the contract, and retaining its benefits, and not rescinding, successfully resist the vendor's suit for the purchase money (*McNair v. Sockriter,* 199 Iowa 1176; *McCreary v. McGregor,* 183 Iowa 732; *Sharp v. Bremer,* 192 Iowa 797); though they may, of course, insist on the performance of the vendor's subsisting agreements or covenants. *Lillienthal v. Bierkamp,* 133 Iowa 42. When the abstract of title was offered in evidence, the only objection made was that it showed the $20,000 mort-

gage, and that it was too late, and irrelevant, incompetent, and immaterial, and did not comply with the contract. The same objection was made to the offer of the release of the mortgage. It is now (as it was in the objections after decree; to be noted,) claimed that the release was defective because made by the "Chicago Joint Stock Land Bank of Chicago, Illinois," in-

5. MORTGAGES: release: change in name of mortgagee: presumption.

stead of by the "First Joint Stock Land Bank of Chicago," which was the name of the mortgagee, as given in the mortgage. This objection is too late. Further, the release recites:

"The First Joint Stock Land Bank of Chicago on the first day of August, 1922, by amendment to its charter and with the approval of the Federal Farm Land Board of Washington, D. C., changed its corporate name to 'Chicago Joint Stock Land Bank.' "

No reason appears for questioning this recital.

The decree stayed special execution for 30 days, and provided that, if the defendants paid the judgment during that time, the clerk should deliver the plaintiff's deed, and plaintiff

6. VENDOR AND PURCHASER: performance of contract:. merchantable title: belated objections.

should cause the release of the mortgage to be recorded and the abstract continued for the purpose of showing such recording, and should deliver the abstract, so continued, to the clerk, for defendant. The release was recorded, and the abstract showing it was filed with the clerk within the 30 days. Defendants then filed with the clerk further objections to the abstract. By these objections it is claimed that the release of the mortgage was defective, on account of the insufficient showing of identity of the mortgagee and releasor. No such objection was made before decree. It was too late, and is without merit. It was further objected that, on January 24, 1924, after the submission of the case, a judgment for debt and costs was entered against this plaintiff in another suit, which was a lien upon the land. This judgment is not a lien, as against the defendants to this action. *Cumming v. First Nat. Bank*, 199 Iowa 667. It is further objected that a former owner of the land in 1876 made a coal mining lease for the term of 10 years from its date, which was recorded March 2, 1904. There is no merit in this objection. It is further objected that one of the heirs of a former owner, who

died in 1889, was named in the probate and partition proceedings "Homer Wharton," and conveyed as "Homer F. Wharton." The last of these proceedings was the decree of partition sale, March 17, 1890. The deed by Homer F. Wharton was recorded June 6, 1900. Objection is also made that a deed for one 40 dated June 2, 1899, is to George Prine, while the conveyance on December 24, 1912, is by George S. Prine. The name of the grantee of the other 40 by the same grantor was given as George S. Prine. No reason for questioning the identity is shown. It is a matter of general knowledge that the initial of the second Christian name is frequently omitted, and by the great weight of authority its omission, in the absence of special circumstances raising doubt about identity, is immaterial. *Hendershott v. Thompson,* 1 Morris 186; *State v. Williams,* 20 Iowa 98; *Porter v. Butterfield,* 116 Iowa 725; *Keenan v. Briden,* 45 R. I. 119 (119 Atl. 138); *People v. Goscinsky,* 52 Cal. App. 62 (198 Pac. 40); 29 Cyc. 266; *Gordon v. Ransom & Lomax Lbr. Co.,* 151 Ga. 181 (106 S. E. 176). See Chapter 272, Section 7, Acts of the Thirty-fifth General Assembly (Section 2963-k, Code Supplement, 1913). The objections were made too late. If they had been made promptly, they were without merit. *Kurtz v. Gramenz,* 198 Iowa 222. The plaintiff was tendering good title, in accordance with the contract, when the trial was had and the decree rendered, and, on the face of this case, was entitled to specific performance. *Allen v. Adams,* 162 Iowa 300. See, also, *Durband v. Ney,* 196 Iowa 574.

V.    It is contended that the evidence does not support a personal judgment against the assignee defendants. The court gave judgment in favor of Broerman against each of the other defendants for the full sum, principal, interest, and costs,

7. APPEAL AND ERROR: review: failure of cross-petitioners to appeal between each other.

"or so much thereof as the defendant William H. Broerman may be required to pay in satisfaction of the judgment herein rendered in favor of the plaintiff." It also gave the like judgments in favor of later assignees and against the subassignees from them. The record does not show the taking of any appeal by the cross-petitioners, as between each other. No notice of appeal by the other defendants has been served on Broerman. The rights of the parties under the decree on the

cross-petitions cannot be disturbed on this appeal. *Oskaloosa Sav. Bank v. Miller,* 189 Iowa 393; *Dillavou v. Dillavou,* 142 Iowa 291; *Brewer v. Stark,* 198 Iowa 1238; *Farmers Lbr. Co. v. Sheahan,* 199 Iowa 1122. We think that the determination of the primary liability of the later assignees to Broerman finally settles also the plaintiff's derivative right to enforce it.

VI. Defendants argue that, because of the mortgage, there was a lack of mutuality. The plaintiff had title. He transmitted an equitable title and the possession to the defendants. The action is to enforce performance and to foreclose

**8. VENDOR AND PURCHASER: construction of contract: non-mutuality.** under the statute, and is not strictly an action for specific performance. *Stevenson v. Polk,* 71 Iowa 278, 285. Without doubt, there was mutuality of obligation. There was also mutuality of remedy, because the plaintiff was the owner of the land. The remedy by specific performance has always been available to the defendant. 5 Pomeroy's Equity Jurisprudence (2d Ed.), Sections 2191, 2230; *Kurtz v. Gramenz,* 198 Iowa 222; *Montgomery v. Gibbs,* 40 Iowa 652; *Olson & Nessa v. Rogness,* 173 Iowa 331, 341. The case is not one in which the vendor never had any title, and was a mere speculator, and for that or other reasons a suit against him for specific performance would have been unavailing. *Luce v. Deitz,* 46 Iowa 205; *Webb v. Hancher,* 127 Iowa 269, 276; *Murray Bros. v. Keesey,* 183 Iowa 739; *Olson & Nessa v. Rogness,* 173 Iowa 331; *Marti v. Ludeking,* 193 Iowa 500; *Braig v. Frye,* 199 Iowa 184. Furthermore, plaintiff testifies that he told Broerman and the attorney that he would have the mortgage released as to the land when the purchase price was paid. He assigned his contract to Butler, who paid the $1,500. At least three other assignments of the contract have been made. The assignees took possession and enjoyed the use of the premises from March 1, 1920, to April 20, 1923. They committed at least some waste. They made only the first payment, $1,500, a little over 5 per cent of the purchase money, and one year's interest, at 5½ per cent. They left the taxes for 1922 for the plaintiff to pay. Plaintiff testified, on cross-examination, that the buyers knew of the mortgage, "and Mr. Johnson knew it when he made the contract, because I told them about this * * * Mr. Butler also knows it.

It was general knowledge.'' Mr. Keating say's, as above stated, that Broerman spoke of the Joint Stock Land Bank loan. The unsupported denial of Mr. Broerman that ''I never heard tell of that $20,000 mortgage'' is not impressive. Defendants never asked for an abstract. The record does not show, otherwise than by inference from plaintiff's testimony referred to, when the mortgage could be paid. It was released as to land involved in this suit, May 16, 1923. It was dated January 15, 1918, and, under the law, might have been paid after five years. 9 U. S. Compiled Statutes 12117, Section 9835ff. The defendants were always owing more than enough to pay the mortgage, so that their rights could be amply protected by the court. On this record, it would not be in accordance with the principles of equity in administering its remedies to deny specific performance. *Kurtz v. Gramenz,* 198 Iowa 222.

The judgment is—*Affirmed.*

DE GRAFF, C. J., and EVANS and ALBERT, JJ., concur.